Marco Antonio GARCIA, Appellant

v.

The STATE of Texas, Appellee.

No. 14–04–01117–CR.

Court of Appeals of Texas, Houston (14th Dist.).

April 13, 2006.

Roger L. Ezell, Galveston, for appellants.

M. Elizabeth Foley, Galveston, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and ANDERSON.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Marco Antonio Garcia, appeals from his conviction for the murder of Earl Bland. After the trial court denied appellant's motion to suppress his multiple confessions, a jury convicted him of murder, and the trial court sentenced him to forty years' imprisonment. In a single issue, appellant contends that the trial court erred in denying the motion to suppress. We affirm.

### Background

Appellant filed a motion to suppress statements that he gave to police officers. The trial court held an evidentiary hearing on appellant's motion. At the hearing, Detective Joe Stanton and Sergeant Brian Goetschius of the Texas City Police Department testified. They stated that on December 14, 2002, Earl Bland was stabbed to death in his home in Texas City. The officers developed appellant as a suspect in the crime and discovered that he had an outstanding arrest warrant for a parole violation. The officers located appellant in Harris County, where local law enforcement officers arrested him at 5:30 p.m. on January 13, 2003. The Texas City officers took him into custody and returned him to the Texas City jail. He was arrested on the parole violation warrant, and no warrant had yet issued relating to the murder investigation. Appellant was calm and cooperative, and the officers provided him with a meal and something to drink. They offered to let him use a telephone, but he declined the offer. That

evening, appellant signed three separate waivers of his Miranda rights after the officers explained those rights to him.

In association with the waivers, appellant also signed three statements in which he confessed to stabbing Bland to death and stealing electrical equipment from Bland's house. In the statements, appellant further explained that he had needed a place to stay, and some mutual friends introduced him to Bland. After the group used drugs together, the friends left appellant at Bland's house. Appellant said that Bland propositioned him, but appellant declined the sexual advances. Appellant said that he then went to sleep but was later awakened by Bland attempting to perform a sexual act upon him. Appellant went to the kitchen, retrieved a steak knife, and stabbed Bland to death. He also identified a pair of shoes that he was wearing at the time he stabbed Bland, and he said that he cut his thumb during the encounter. The officers testified that appellant appeared to understand his rights as explained to him by the officers, appellant freely and voluntarily waived his right to counsel, and at no point during that first evening did appellant request counsel.

The next morning, January 14, 2003, appellant was taken before a magistrate at 8:20 a.m. Sergeant Goetschius testified that it was normal procedure to take someone before a magistrate the following morning when that person was arrested at night. The magistrate provided appellant with statutory warnings. The written warnings statement signed by appellant indicates that he had been accused of "A) parole violation[,] B) investigation of capital murder." The statement further notes that appellant requested appointed counsel. The record also contains a request for counsel, signed by appellant, that lists only the parole violation in the blanks provided for offenses. Detective Stanton, who stat-

ed that he was present when the magistrate gave the statutory warnings, testified that appellant requested counsel only in regards to the parole violation and not in regards to the investigation of capital murder. The officers further explained that the "investigation of capital murder" language was written on the warnings statement only because an assistant district attorney requested that it be added. At that time, no steps were taken to obtain a lawyer to represent appellant. Also, no further questions were asked regarding the parole violation.

After receiving the first set of statutory warnings, appellant signed several more waivers of his rights and made several more statements concerning various details of the events surrounding Bland's death. In the statements, he admitted that Bland had not threatened him, and he identified several more photographs of items and locations connected to Bland's death. Two of the statements were videotaped. Appellant also gave permission for a sample of his saliva to be taken for DNA testing.

On January 15, 2003, an arrest warrant was issued for appellant for Bland's murder. A magistrate administered statutory warnings relating to the murder charge. The written warnings statement signed by appellant indicates that he was accused of murder and that he requested counsel. A signed request for counsel also indicates that it was in relation to the murder charge. The officers stated that no further questioning of appellant occurred after he requested counsel for the murder charge.

Appellant also testified at the hearing. He stated that he was told that he was being arrested on a parole violation but that he felt like he was taken to Texas City for questioning regarding a murder. He didn't feel like the officers would have provided him with an attorney had he asked for one during the interrogations. He stated that he was confused, felt intimidated, and would have liked to have had an attorney representing him.

The trial court denied the motion to suppress in its entirety. In written findings of fact and conclusions of law, the court held, among other things, that appellant (1) was arrested on the parole violation, (2) was brought before a magistrate without unnecessary delay, (3) had originally requested an attorney only on the parole violation, and (4) had consistently waived his right to counsel on the murder investigation until the second set of statutory warnings were administered by the magistrate.

*Discussion*

In his sole issue, appellant contends that the trial court erred in refusing to suppress the statements he gave to the Texas City police because his constitutional and statutory rights were violated. We review a trial court's ruling on a motion to suppress evidence under an abuse of discretion standard. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). At a suppression hearing, the trial judge is the sole fact finder. *Arnold v. State,* 873 S.W.2d 27, 34 (Tex.Crim.App.1993). We give almost total deference to the trial court's determination of historical facts when supported by the record, particularly if the findings turn on witness credibility and demeanor. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim. App.2000); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The same deference is accorded to determinations of mixed questions of law and fact if their resolution depends upon witness credibility and demeanor. *Ross,* 32 S.W.3d at 856. Issues that present purely legal questions

are considered under a de novo standard. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal*, 935 S.W.2d at 138.

Appellant makes two basic assertions: (1) the officers failed to take him before a magistrate without unnecessary delay, and (2) the officers continued to question him after he requested an attorney in violation of his constitutional rights. We will discuss each contention in turn.

*Without Unnecessary Delay*

■ Appellant first asserts that the Texas City officers failed to take him before a magistrate without unnecessary delay as required by section 15.17 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 15.17 (Vernon 2005).[1] He alleges that the trial court erred in determining that he was taken before a magistrate without unnecessary delay and, thus, in determining that his statements were admissible. Article 15.17 requires that a person arrested pursuant to an arrest warrant must be taken before a magistrate without unnecessary delay. *Id.; Cantu v. State*, 842 S.W.2d 667, 680 n. 9 (Tex.Crim.App.1992).[2] However, the failure to take an arrestee before a magistrate in a timely fashion will not invalidate evidence garnered from his detention in the intervening period unless there is proof of a causal connection between the

delay and the gathering of the evidence. *Jones v. State*, 944 S.W.2d 642, 649 n. 10 (Tex.Crim.App.1996); *Cantu*, 842 S.W.2d at 680; *Zarychta v. State*, 44 S.W.3d 155, 169 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

■ Here, appellant argues that the fact that he was arrested on the "pretext" of a parole violation but then questioned on the murder demonstrates a causal connection between the delay and the confessions. Appellant, however, does not cite any authority in support of this argument, nor does he explain how an arrest on one charge and questioning on another potential charge established a connection between the delay in bringing him before a magistrate and his providing statements to the police. Instead, appellant points to his own testimony wherein he stated that he was confused, intimidated, wanted an attorney present, and didn't know what was happening. As the sole trier of fact, the trial court could have disregarded appellant's self-serving testimony in favor of that of the police officers who questioned him. *See Arnold*, 873 S.W.2d at 34. Both Detective Stanton and Sergeant Goetschius testified that appellant was calm and cooperative, they provided him with a meal and something to drink, and they offered to let him use a telephone. They further testified that appellant began making his first voluntary statement about four to four-and-a-half hours after his arrest. *See Jenkins v. State*, 912 S.W.2d 793, 807 (Tex.

1. In his brief, appellant discusses at some length the fact that although he was assigned to parole in Harris County and arrested in Harris County, the officers took him to Galveston County before bringing him before a magistrate. However, appellant does not argue that this procedure alone rendered his statements inadmissible; the only argument appellant makes in relation to these facts is that he was not taken before a magistrate without unnecessary delay. We therefore concentrate our analysis on the argument

made and not on appellant's transfer from Harris County to Galveston County.

2. The State contends that article 15.17 is inapplicable because appellant was arrested pursuant to a parole violation warrant and not an arrest warrant issued by a magistrate. Because we find that the issues raised by appellant are without merit, we need not address this argument by the State.

Crim.App.1993) (holding that sixteen hours was not an unnecessary delay in taking an arrestee before a magistrate without analysis of conditions or circumstances). We find that appellant has failed to demonstrate a causal connection between the delay in bringing him before a magistrate and his statements to police. *See Cantu,* 842 S.W.2d at 680 (holding defendant failed to demonstrate a connection between delay and statements).

Furthermore, it is well-settled that an unreasonable delay in bringing an arrestee before a magistrate will not invalidate an otherwise voluntary confession if the arrestee was properly advised of his Miranda rights prior to making the statement. *Jones,* 944 S.W.2d at 649 n. 10; *Cantu,* 842 S.W.2d at 680; *Zarychta,* 44 S.W.3d at 169. Here, the officers testified that they explained appellant's Miranda rights to him, and he subsequently voluntarily signed waivers of those rights. Such waivers in fact appear in the record from the suppression hearing. Accordingly, we find that appellant's first assertion is without merit.

### Right to Counsel

We next turn to appellant's argument concerning his request for appointment of counsel when the magistrate gave him his first set of statutory warnings.[3] Appellant suggests that, at a minimum, this request for counsel should have prevented the admission of any statements given after he made the request.[4] In support of this argument, appellant cites only *Coleman v.*

State, 646 S.W.2d 937 (Tex.Crim.App. 1983). In *Coleman,* the Court of Criminal Appeals explained that when an accused invokes his Fifth Amendment, or "Miranda," right to counsel, a valid waiver of that right cannot be established by showing that the accused continued to respond to questions, and the accused should not be subject to further interrogation until counsel has been made available. *Id.* at 939 (following *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)).

As subsequent United States Supreme Court and Texas Court of Criminal appeals cases illustrate and explain, the United States Constitution provides two distinct guarantees of the right to counsel. *See, e.g., McNeil v. Wisconsin,* 501 U.S. 171, 176–78, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *Green v. State,* 934 S.W.2d 92, 97 (Tex.Crim.App.1996).

Under the Sixth Amendment, the right to counsel is a broad guarantee of assistance of counsel for defense in a criminal prosecution. U.S. CONST. amend. VI; *see also McNeil,* 501 U.S. at 175, 111 S.Ct. 2204. The Sixth Amendment right, however, does not arise until adversarial proceedings have begun, whether by formal charge, preliminary hearing, indictment, information, or arraignment. *United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). Additionally, the Sixth Amendment right is offense specific. *McNeil,* 501 U.S. at 175, 111 S.Ct. 2204. In other words, the fact

---

**3.** It is unclear whether appellant intended to raise the right to counsel issue as a separate ground for reversal or only as part of his unnecessary delay argument. However, in an abundance of caution, we address the right to counsel issue as an independent assertion of error.

**4.** The issue is potentially meaningful because although appellant made statements confessing to having killed Bland both before and after making the request for counsel, he made statements denying that Bland had threatened him only after he made the request for counsel. At trial on the merits, appellant's primary legal theory was that he acted in self-defense.

that a suspect has invoked his or her Sixth Amendment right to counsel in relation to one offense bars police from interrogating the suspect, without counsel, in relation to that offense, but it does not bar police from interrogating the suspect in regard to another unrelated offense. *Id.* at 175–76, 111 S.Ct. 2204.

 Under the Fifth Amendment, a right to counsel exists as a prophylactic protection of the right to remain silent; in other words, it exists to counteract the inherent pressures of custodial interrogation. U.S. Const. amend. V; *McNeil,* 501 U.S. at 176, 111 S.Ct. 2204 (citing *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Once a suspect asserts his or her Fifth Amendment right, he or she cannot be further interrogated outside the presence of counsel unless the suspect him or herself initiates the contact. *Edwards,* 451 U.S. at 484–85, 101 S.Ct. 1880. This is true, so long as there is no break in custody, even if the subsequent interrogation concerns an offense unrelated to the subject of the first interrogation. *Arizona v. Roberson,* 486 U.S. 675, 685–88, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); *Green,* 934 S.W.2d at 97. Thus, the Fifth Amendment right to counsel is said to be "non-offense specific." *Green,* 934 S.W.2d at 97.

Because invocation of the Fifth Amendment right to counsel is non-offense specific but invocation of the Sixth Amendment right is offense specific, we must determine in the present case whether appellant invoked either his Fifth or Sixth Amendment rights or both, and, if appellant invoked only his Sixth amendment right, we must determine whether he invoked it for the parole violation, the murder allegation, or both. As discussed below, we find that the record supports the conclusion that appellant invoked only his Sixth Amendment right in regards to the parole violation; thus, his subsequent statements regarding the murder were not inadmissible as violative of his constitutional rights to counsel.

 The point at which adversarial judicial proceedings begin is a matter of state law. *Hidalgo v. State,* 983 S.W.2d 746, 752 (Tex.Crim.App.1999). At least one court of appeals has expressly held that a section 15.17 appearance before a magistrate constitutes the initiation of adversarial judicial proceedings for Sixth Amendment purposes, provided an arrest warrant has issued. *Hargrove v. State,* 162 S.W.3d 313, 320 (Tex.App.-Fort Worth 2005, pet. ref'd) (analyzing Court of Criminal Appeals decisions concerning initiation of adversarial proceedings); *see also Lemmons v. State,* 75 S.W.3d 513, 520 n. 8 (Tex.App.-San Antonio 2002, pet. ref'd)(noting that State conceded that adversarial proceedings had been initiated where magistrate's section 15.17 hearing occurred seven days before the interrogation in question).[5] In the absence of ex-

---

5. In *McFarland v. State,* the Court of Criminal appeals listed examples of actions which have been held to constitute the initiation of adversary proceedings in Texas. 928 S.W.2d 482, 507 (Tex.Crim.App.1996). The court included this entry: "an Article 15.17 'warning hearing,' where arrest warrant was present." *Id.* In support of this entry, the court cited *Nehman v. State,* 721 S.W.2d 319 (Tex.Crim.App. 1986). However, in *Nehman,* not only had an arrest warrant issued by the time of the magistrate's hearing, but the court stated that formal charges had been filed. 721 S.W.2d at 323 n. 2. It is unclear whether by "formal charges" the court meant merely that an arrest warrant had issued or something more. *See Green v. State,* 872 S.W.2d 717, 729–32 (Tex.Crim.App.1994) (Meyers, J., concurring) (discussing *Nehman* and concluding that (1) "it is fair to say" that it stands for the proposition that arrest warrants constitute formal criminal charges in the Sixth Amendment context, and (2) this conclusion "is not well supported by federal Sixth Amendment juris-

plicit guidance from the Court of Criminal Appeals, we agree with the holding in *Hargrove*.

██ Here, an arrest warrant had issued on the parole violation prior to appellant's first appearance before the magistrate. The magistrate then administered statutory warnings to appellant and denied bond. However, an arrest warrant for the murder charge did not issue until the following day, when appellant was again taken before the magistrate. Therefore, it appears that at the time of the first appearance before a magistrate, formal proceedings had been initiated on the parole violation but not on the murder charge. *See Hargrove*, 162 S.W.3d at 320.

During his first appearance before the magistrate, appellant signed a request for appointment of counsel, indicating that it was for the parole violation offense. The statutory warnings statement signed at the same appearance, however, indicated that the warnings were given for both the parole violation offense and "investigation of capital murder." The statement further notes that appellant requested appointed counsel. In its findings of fact, the trial court found that appellant had requested an attorney only for the parole violation. The trial court's finding is supported by the request signed by appellant, which lists only the parole violation. It is also supported by the testimony of Detective Stanton, who stated that he was present when the magistrate gave the warnings, and that appellant requested counsel only in regards to the parole violation and not to the investigation of capital murder. Detective Stanton further explained that the investigation language was written on the statutory warnings statement only because an assistant district attorney requested that it

be added. Additionally, the record contains several more waivers of the right to counsel signed by appellant after he received the first set of statutory warnings from the magistrate.

Although the listing of the murder investigation on the statutory warnings statement could be considered some evidence supporting appellant's contention that he requested counsel for both offenses, the trial court was within its discretion in believing the officers' explanation. *See Ross*, 32 S.W.3d at 856; *Arnold*, 873 S.W.2d at 34. Because the Sixth Amendment right is offense specific, appellant's assertion of the right in regard to the parole violation did not bar officers from questioning appellant regarding the murder allegation.

██ Next, we consider whether appellant's request for appointed counsel for the parole violation also constituted a Fifth Amendment assertion of the right to counsel such that it was improper for officers to continue questioning him about the murder allegation. The Fifth Amendment right to counsel is invoked "only when the suspect 'ha[s] expressed' his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*." *McNeil*, 501 U.S. at 178, 111 S.Ct. 2204 (quoting *Edwards*, 451 U.S. at 484, 101 S.Ct. 1880). "It requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *Id.*; *Green*, 934 S.W.2d at 97 (quoting *McNeil*). In *McNeil*, the Court went on to hold that invocation of the offense specific Sixth Amendment right to counsel at a bail hearing did not by itself invoke the non-offense

prudence" or "the realities of criminal prosecution under Texas law"). It is also, therefore, unclear whether formal charges had

been filed against appellant in the present case. Thus, neither *McFarland* nor *Nehman* is necessarily controlling on this issue.

specific Fifth amendment right to counsel. 501 U.S. at 178–80, 111 S.Ct. 2204. In doing so, the court quoted the Washington Supreme Court: "[T]o find that [the defendant] invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request." *Id.* at 178–79, 111 S.Ct. 2204 (quoting *State v. Stewart,* 113 Wash.2d 462, 780 P.2d 844, 849 (1989)). Similarly, in *Green,* the Court of Criminal Appeals relied on *McNeil,* stating that a suspect's request when he appeared before a magistrate that the latter appoint counsel did not constitute "an expression for assistance in dealing with custodial interrogation by the police." 934 S.W.2d at 97. The court held that the suspect's Sixth Amendment request for counsel on a robbery charge did not prevent his subsequent interrogation on a murder allegation. *Id.* at 98.

The situation faced by the court in *Green* was substantially similar to the situation now before us. Although appellant requested appointment of counsel on the parole violation, there is no showing that he expressed a desire for the assistance of an attorney in dealing with custodial interrogation.[6] Furthermore, appellant never requested assistance of counsel in response to police questioning, and he consistently waived his rights to remain silent and obtain the assistance of counsel in regard to the custodial interrogation. *See id.* at 97 (noting that at no time did suspect request the assistance of counsel in response to police questioning). Accordingly, the trial court did not violate appellant's constitu-

tional rights in admitting the statements. Appellant's sole issue is overruled.

The trial court's judgment is affirmed.

---

6. There is one distinguishing feature: in *Green,* the interrogation of the suspect regarding the murder allegation did not occur until several days after he requested appointment of counsel on the robbery charge; whereas, in the present case, appellant was subject to

interrogation on the murder allegation both before and after he requested appointment of counsel on the parole violation. *See* 934 S.W.2d at 96. Although noteworthy, this distinction does not render *McNeil* and *Green* inapplicable to the present case.