NUMBER 13-08-259-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CAROLINE KATHLEEN CALLAWAY, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the County Court at Law No. 3

of Collin County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion by Justice Vela



 A jury convicted appellant, Caroline Kathleen Callaway, of the offense of
misdemeanor driving while intoxicated (DWI). See Tex. Penal Code Ann. § 49.04(a)
(Vernon 2003). The court assessed punishment at confinement for ninety days in jail, plus
an $850.00 fine. The sentence was suspended, and she was put on community
supervision for one year. In five issues, she argues the court erred by 1) overruling her
objection to the State's closing argument, 2) denying her request for a jury instruction, and
3) failing to exclude statements she made to the arresting officer. We affirm.

I. Factual Background


 On August 14, 2007, Callaway drove her Volkswagen to a bar called "Martini Park"
in Plano, Texas. There, she drank three glasses of red wine, and at 10:50 p.m., began
driving home. Ten minutes later, she pulled into the parking lot of a 7-Eleven on Dallas
Parkway. About 1:30 a.m. the following morning, Frisco police officer Joseph Robin
stopped at the 7-Eleven and saw Callaway sitting in the driver's seat of a Volkswagen. The
vehicle was running with the driver's side window down, and Callaway was the only
occupant. Although she "appeared to be asleep," Callaway was "slumped over," and her
hands were in her purse. Officer Robin spoke to Callaway but could not wake her up. He
testified that when he opened her door, "she seemed to wake up at that point and then
immediately pass[ed] back out." He patted her on the back, and eventually she woke up. 
He asked her several times to exit the vehicle, but she did not comply. After asking her
several times if she had been drinking, Callaway answered affirmatively. When she got
out of the vehicle, he asked her how much she had to drink. She said, "[s]everal" and
stated that she had been drinking red wine. When he searched her for weapons, "she
placed her arms out at her side" and said, "[A]irplane--or airport." When he asked her what
she was doing, she said, "[T]his is what you do at the airport." When Officer Robin asked
her to do some field-sobriety tests, she refused and told him she wanted a lawyer. Officer
Robin testified that Callaway had "bloodshot" eyes, "slurred speech," and the smell of
alcohol on her breath. She told him she had come from Martini Park and that she had
"pulled into the 7-Eleven parking lot because she realized she was too drunk to drive, and 
to sleep it off." A half-empty bottle of wine was found in her vehicle. At trial, when asked
whether appellant was intoxicated, Officer Robin stated "my opinion was that she was
intoxicated. She was not able to operate a motor vehicle safely."

 On direct examination, defense counsel asked Callaway whether she remembered
telling Officer Robin that she was intoxicated. Callaway replied "yes, I do."

II. Jury Argument


 By her first and second issues, Callaway contends the trial court erred by overruling
her objection to a remark made by the State during closing argument, and that the failure
to sustain the objection deprived her of the right to confront her accusers under the
Confrontation Clause and the Sixth Amendment to the United States Constitution. We will
address both issues together.

A. Standard of Review

 "'It is the duty of trial counsel to confine their arguments to the record; reference to
facts that are neither in evidence nor inferable from the evidence is therefore improper.'" 
Brown v. State, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (quoting Alejandro v. State,
493 S.W.2d 230, 231 (Tex. Crim. App. 1973)). The four permissible areas of jury
argument are: "(1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." 
Id. "[E]rror exists when facts not supported by the record are interjected in the argument,
but such error is not reversible unless, in light of the record, the argument is extreme or
manifestly improper." Id. "In determining whether jury argument is extreme or manifestly
improper, we look at the entire record of final arguments to determine if there was a willful
and calculated effort on the part of the State to deprive appellant of a fair and impartial
trial." Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1993). We must consider
counsel's remarks during closing argument in the context in which they appear. Drew v.
State, 743 S.W.2d 207, 220 (Tex. Crim. App. 1987); Ayala v. State, 267 S.W.3d 428, 433
(Tex. App.-Houston [14th Dist.] 2008, pet. ref'd).

 The Sixth Amendment protects a defendant's right to confront and cross-examine
witnesses against him. U.S. Const. amend VI; Davis v. Alaska, 415 U.S. 308, 315-16
(1974). This right is violated when appropriate cross-examination is limited. Carroll v.
State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). In Crawford v. Washington, the
Supreme Court stated that the Confrontation Clause of the Sixth Amendment bars the
"admission of testimonial statements of a witness who did not appear at trial unless he was
unavailable to testify and the defendant had had a prior opportunity for cross-examination." 
541 U.S. 36, 53-54 (2004).

B. Context of the Complained-Of Remark

 During Callaway's guilt-innocence closing argument, her counsel argued to the jury:

 I'm not here to tell you that I support her [Callaway's] decision to pull
off the highway and go to sleep at 1:30 in the morning or eleven o'clock at
night. May not be the smartest thing in the world, but it's not against the law
to do it. Y'all know that it's done a lot. . . . It happens a lot. It is not against
the law.


 And, in fact, law enforcement sometimes encourages it so that people
don't fall asleep at the wheel and cause accidents. She [appellant] said I
was trying to do the right thing. I was trying to do the right thing. And now,
the State of Texas wants to take her freedom away from her for doing the
right thing. 


 After counsel finished his closing argument, the prosecutor argued, in relevant part:

 Ladies and gentleman, this case is about taking responsibility, about
taking responsibility at the beginning and at the end. . . . Is this right? Is this
fair and is this justice for someone to drive from the Martini bar down--up
Dallas Parkway, loop around, and stop at 7-Eleven because she was too
drunk to drive?


 * * *


 You don't reward the Defendant because she barely sideswiped a
couple of cars.


 To the italicized remark, defense counsel objected as follows: "There is absolutely
no evidence about sideswiping cars. That's outside the record. That's unsworn testimony. 
I object. It denies us our right to cross-examine and confront witnesses." In response to
the objection, the prosecutor argued, "[T]he State is not alleging that this did happen. It's
an argument of trying to reward the defendant based upon a reward for not doing that." 
The trial court overruled the objection, and the prosecutor continued his argument to the
jury:

 Do you reward her [appellant] for driving while intoxicated up to a point
at 7-Eleven? Do you reward her for driving northbound on Dallas Parkway,
pulling over because she was too drunk to drive? Do you reward her
because she's asleep at the wheel at 7-Eleven at 1:25 when she has claimed
that she's not intoxicated? According to her on the stand. You do not
reward her for these actions by letting her go. You hold her responsible for
her actions. She said she was drunk. She said she was intoxicated. She
said she drove to 7-Eleven. You hold her responsible because in Collin
County we hold people responsible for their actions.


 * * *


 Do you or would you reward a complete drunk person just because
they got to their home? They committed the offense. The elements were
met. Beyond a reasonable doubt, ladies and gentlemen. Beyond a
reasonable doubt. She's guilty of driving while intoxicated.



C. Analysis

 The prosecutor's remark that Callaway sideswiped two cars on her way from Martini
Park to the 7-Eleven was clarified when he explained that "the State is not alleging that this
did happen. It's an argument of trying to reward the defendant based upon a reward for
not doing that." Thus, the prosecutor was not interjecting facts not supported by the
record, and he was not referring to testimonial statements of a witness who did not appear
at trial. Such testimony is barred by the Confrontation Clause. See Crawford, 541 U.S.
at 53-54. Earlier, defense counsel had argued to the jury that "law enforcement sometimes
encourages it [drivers to pull off the highway] so that people don't fall asleep at the wheel
and cause accidents." Defense counsel argued that appellant "was trying to do the right
thing[]" by stopping at the 7-Eleven and that the State wanted to take appellant's "freedom
away from her for doing the right thing." Put in context, the remark was an attempt to
argue to the jury that just because a driver does the right thing by pulling off the road to
sleep, thereby avoiding a serious collision, the driver should not be rewarded by a verdict
of not guilty. Accordingly, we conclude that the prosecutor was answering defense
counsel's argument and making a plea for law enforcement, both of which constitute
proper jury argument. See Brown, 270 S.3d at 570 (stating that "answer to the argument
of opposing counsel" and "plea for law enforcement" constitute proper jury argument). 
Although it is possible to construe the objected-to remark as being improper when taken
out of its full context, the remark, when put it context, is not improper. Even if the remark
could be viewed as improper, we cannot conclude that there was a willful and calculated
effort to deprive Callaway of a fair and impartial trial. See Cantu, 939 S.W.2d at 633. 
Thus, the trial court did not err by overruling the objection. Issues one and two are
overruled.

II. Jury Instruction on Corroboration


 In issue three, Callaway contends the trial court erred in not instructing the jury
about the corpus delicti rule for the corroboration of a defendant's extrajudicial admissions. 
After both sides rested and closed, defense counsel requested the trial court to include an
instruction in the charge "that the admission of the defendant cannot be used by itself to
establish the element, corpus delicti of an offense, and that the defendant's admission has
to be corroborated before it can be used to establish any element of the offense." The trial
court denied the requested instruction.

A. Standard of Review

 Appellate review of an error in a jury charge involves a two-step process. Abdnor
v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1991). First, we determine whether there
was error in the charge. Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985)
(op. on reh'g). If so, "the next step is to make an evidentiary review . . . as well as a review
of any other part of the record as a whole which may illuminate the actual, not just
theoretical, harm to the accused." Id.

B. Applicable Law

 The corpus delicti rule is a rule of evidentiary sufficiency, meaning that an
extrajudicial confession of wrongdoing, standing alone, is not enough to support a
conviction; other evidence must exist showing that a crime has in fact been committed. 
Rocha v. State, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000) (citing Williams v. State, 958
S.W.2d 186, 190 (Tex. Crim. App. 1997)). "This other evidence is commonly referred to
as the 'corpus delicti.'" Id. "This other evidence need not be sufficient by itself to prove the
offense: 'all that is required is that there be some evidence which renders the commission
of the offense more probable than it would be without the evidence.'" Id. (quoting Williams,
958 S.W.2d at 190). "[A] trial judge need not instruct the jury on corroboration when the
corpus delicti is established by other evidence." Baldree v. State, 784 S.W.2d 676, 686-87
(Tex. Crim. App. 1989). The corpus delicti of DWI "is that someone drove or operated a
motor vehicle in a public place while intoxicated." Layland v. State, 144 S.W.3d 647, 651
(Tex. App.-Beaumont 2004, no pet.).

C. Analysis

 Appellant testified that she drove from Plano to a 7-Eleven, where she parked her
vehicle. Officer Robin testified that this 7-Eleven is located on a public road. Accordingly,
evidence other than Callaway's extrajudicial admission established the first two elements
of the corpus delicti of the offense. See Layland, 144 S.W.3d at 651. Other than
Callaway's extrajudicial admissions about her intoxication, there is some other evidence
which renders the intoxication element of the corpus delicti more probable than it would be
without the evidence: (1) Callaway testified she drank three glasses of red wine and then
left Martini Park about 10:50 p.m., arriving at the 7-Eleven about 11:00 p.m.; (2) at 1:30
a.m., Officer Robin saw Callaway slumped over in the driver's seat of her vehicle; (3)
Callaway did not wake up when Officer Robin tried to wake her; (4) when he opened her
door, "she seemed to wake up at that point and then immediately pass[ed] back out;" (5)
he asked her several times to exit the vehicle, but she did not comply; (6) when he
searched her, "she placed her arms out at her side" and said, "[A]irplane--or airport;" (7)
she had bloodshot eyes, slurred speech, and her breath smelled of alcohol; (8) a half-empty bottle of wine was in her vehicle; and (9) Officer Robin testified that, in his opinion,
she was intoxicated and not able to operate a motor vehicle safely. Because the other
evidence, independent of Callaway's admission, rendered the corpus delicti of DWI more
probable than it would be without the evidence, we hold that the trial court did not err in
refusing to instruct the jury on independent corroboration of her admission to Officer Robin
that she was intoxicated. Issue three is overruled.

IV. Invocation of Constitutional Rights





 In issue four, Callaway contends that the trial court erred in refusing to exclude
evidence showing that she had invoked her right to counsel and her right to remain silent. 
Defense counsel filed a pre-trial motion in limine, requesting the trial court to order the
prosecution not to offer into evidence: 1) any statements made by appellant following the
invocation of her right to counsel or her right to remain silent; and 2) any testimony relating
to any such statements. At a pre-trial hearing, the trial court denied the motion as it
pertained to appellant's invocation of these rights during her encounter with Officer Robin
at the 7-Eleven. 

A. Standard of Review and Applicable Law

 We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will
not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable
disagreement. Id.



 "Under the Fifth Amendment, a right to counsel exists as a prophylactic protection
of the right to remain silent; in other words, it exists to counteract the inherent pressures
of custodial interrogation." Garcia v. State, 191 S.W.3d 870, 877 (Tex. App.-Houston
[14th Dist.] 2006, no pet.) (citing U.S. Const. amend. V; McNeil v. Wisconsin, 501 U.S.
171, 176 (1991)). Once a suspect asserts his or her Fifth Amendment right, he or she
cannot be interrogated outside the presence of counsel unless the suspect initiates the
contact. Id. (citing Edwards v. Arizona, 451 U.S. 477, 484-85 (1981)). "An individual may
not be penalized for exercising his Fifth Amendment rights when he is under police
investigation; evidence of his invocation of his right to counsel is inadmissible as evidence
of guilt." Kalisz v. State, 32 S.W.3d 718, 721 (Tex. App.-Houston [14th Dist.] 2000, pet.
ref'd) (citing Hardie v. State, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991)). Courts have
also held that the invocation of the right to remain silent cannot be admitted as evidence
of guilt. See Cooper v. State, 961 S.W.2d 222, 226 (Tex. App.-Houston [1st Dist.] 1997,
pet. ref'd) (stating that "[e]vidence of invoking the right to terminate an interview is
inadmissible as evidence of guilt") (citing Hardie, 807 S.W.2d at 322). (1)

 Here, the evidence showed that Callaway was under investigation by Officer Robin. 
Therefore, evidence of her invocation of her right to counsel, which includes her right to
remain silent, is inadmissible as evidence of guilt. See Kalisz, 32 S.W.3d at 721; Cooper,
961 S.W.2d at 226. 


B. Preservation of Error


 Callaway complains that during the State's direct-examination of Officer Robin, the
State elicited testimony (2) that she invoked her right to counsel. Rule 33.1 of the Texas
Rules of Appellate Procedure governs preservation of error, and states, in part:

 (a) In General. As a prerequisite to presenting a complaint for appellate
review, the record must show that:


 (1) the complaint was made to the trial court by a timely request, objection,
or motion that:


 (A) stated the grounds for the ruling that the complaining party sought from
the trial court with sufficient specificity to make the trial court aware of the
complaint, unless the specific grounds were apparent from the context;


Tex. R. App. P. 33.1.

 "The complaining party bears the responsibility of clearly conveying to the trial judge
the particular complaint, including the precise and proper application of the law as well as
the underlying rationale." Pena v. State, 285 S.W.3d 459, 463-64 (Tex. Crim. App. 2009). 
"To avoid forfeiting a complaint on appeal, the party must 'let the trial judge know what he
wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to
understand him at a time when the judge is in the proper position to do something about
it.'" Id. at 464 (quoting Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). 
Here, no objection was made to Officer Robin's testimony. Thus, Callaway did not clearly
convey to the trial court "the precise and proper application of the law as well as the
underlying rationale." See id. at 463-64. Furthermore, "[a] motion in limine, whether
granted or denied, preserves nothing for appellate review." Griggs v. State, 213 S.W.3d
923, 926 n.1 (Tex. Crim. App. 2007). Therefore, Callaway did not preserve error. (3) See
Tex. R. App. P. 33.1.

 Even if Callaway had objected to Officer Robin's complained-of testimony and
received an adverse ruling, any error was harmless. "'[O]verruling an objection to evidence
will not result in reversal when other such evidence was received without objection, either
before or after the complained-of ruling. This rule applies whether the other evidence was
introduced by the defendant or the State.'" Reyes v. State, 267 S.W.3d 268, 274 (Tex.
App.-Corpus Christi 2008, pet. ref'd) (quoting Leday v. State, 983 S.W.2d 713, 718 (Tex.
Crim. App. 1998)). Here, during redirect-examination of appellant and during cross-examination of Officer Robin, defense counsel elicited testimony (4) that appellant invoked
her right to counsel. No objection was made to this testimony. Thus, any error in admitting
Officer Robin's testimony that appellant invoked her right to counsel was rendered
harmless because the jury heard testimony elicited by defense counsel that appellant
invoked her right to counsel. See Reyes, 267 S.W.3d at 274 (holding that even if trial court
had overruled accused's objection that audio portion of a videotape allowed the jury to hear
him invoke his rights to counsel and to remain silent, error would have been harmless
because jury heard testimony that accused invoked these rights). Issue four is overruled.

 In issue five, Callaway contends the trial court erred in refusing to exclude
statements she made to Officer Robin in response to his interrogation of her after she
invoked her right to counsel. 

A. Applicable Law

 "The prosecution may not use statements, whether exculpatory or inculpatory,
stemming from custodial interrogation of the defendant unless it demonstrates the use of
procedural safeguards effective to secure the privilege against self-incrimination." Miranda
v. Arizona, 384 U.S. 436, 444 (1966). "For Miranda safeguards to attach, two threshold
issues must be met: 1) the suspect must have been 'in custody,' and 2) the police must
have 'interrogated' the suspect." Little v. State, 853 S.W.2d 179, 183 (Tex. App.-Corpus
Christi 1993, no pet.). "[T]he term 'interrogation' under Miranda refers not only to express
questioning, but also to any words or actions on the part of the police (other than those
normally attendant to arrest and custody) that the police should know are reasonably likely
to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291,
300-301 (1980) (footnotes omitted). The Fifth Amendment "bar[s] police-initiated
interrogation of an accused who, in the context of custodial interrogation, has previously
asserted his right to counsel during such interrogation, unless the accused's counsel is
actually present." Hughen v. State, Nos. PD-1123-08, 1124-08, 2009 WL 3189187, at *4
(Tex. Crim. App. Oct. 7, 2009) (citing Minnick v. Mississippi, 498 U.S. 146, 153 (1990)).

 Article 38.22 of the code of criminal procedure generally precludes the use of
statements that result from custodial interrogation absent compliance with its procedural
safeguards. Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 2005). However, Article
38.22, Section 5 specifically exempts "a statement that does not stem from custodial
interrogation. . . ." Id. § 5. Thus, if appellant's statements did not stem from custodial
interrogation, neither Miranda nor Article 38.22 require their exclusion. Morris v. State, 897
S.W.2d 528, 531 (Tex. App.-El Paso 1995, no pet.) (citing Galloway v. State, 778 S.W.2d
110, 112 (Tex. App.-Houston [14th Dist.] 1989, no pet.)).

B. Analysis

 Callaway complains that the trial court should have excluded Officer Robin's
testimony about: 1) "her refusal to perform the standardized field sobriety tests[;]" 2) "her
denial that some bottles of wine found in her vehicle were opened[;]" 3) "her reference to
Judge Burke as being her lawyer[;]" and 4) "her statements that 'she was intoxicated' and
that 'she was too drunk to drive.'" We address each complaint separately.



1. Refusal to Perform Field-Sobriety Tests

 The record reflects that Callaway invoked her right to counsel after she refused
Officer Robin's request to take the field-sobriety tests. Nevertheless, Callaway did not
object when the prosecutor elicited testimony from Officer Robin that appellant refused to
take the field-sobriety tests. Therefore, appellant did not preserve error. See Tex. R. App.
P. 33.1; Pena, 285 S.W.3d at 464. Accordingly, even if appellant had preserved this
complaint for review, police requests for performing sobriety tests do not constitute
interrogation. Smith v. State, 105 S.W.3d 203, 207 (Tex. App.-Houston [14th Dist.] pet.
ref'd) (citing Kalisz, 32 S.W.3d at 721). Thus, assuming Callaway was in custody when
Officer Robin asked her to take the field-sobriety tests, her response that she did not want
to take them did not result from interrogation. See id. Because the "interrogation"
predicate is not met, neither Miranda nor Article 38.22 require exclusion of appellant's
refusal to take the field-sobriety tests. See Tex. Code Crim. Proc. Ann. art. 38.22, § 5;
Little, 853 S.W.2d at 183.

2. Testimony About the Wine Bottles Found in Appellant's Vehicle


 The record reflects that after Callaway requested an attorney, Officer Robin arrested
her outside the 7-Eleven for DWI. Before he transported her to the police station, other
officers searched her vehicle. When the prosecutor asked Officer Robin, "Were any items
from her [Callaway's] vehicle placed on your patrol car?", he replied, "Yes, they were." 
When asked what those items were, Officer Robin stated, "It was a[n] empty box of Coors
Light, and two bottles of wine. White Zinfandel wine. One was sealed closed and the
other was open and half empty." When the prosecutor asked Officer Robin, "[Did] [t]he
defendant say anything in response to seeing those items on your patrol vehicle?", he said:

 She responded and said that that's not open. And when she said that, I
said--I looked at her and I said are you telling me that's not open, and she
said, yes, the box is, but the Coors Light is not open. I said we're not
referring to the Coors Light; I said we're referring to the bottle of wine.


 Appellant did not object when this testimony was elicited, and therefore did not
preserve error. See Tex. R. App. P. 33.1; Pena, 285 S.W.3d at 464. However, even if
appellant had objected to this testimony and received an adverse ruling, the error would
have been harmless because defense counsel cross-examined Officer Robin about what
Callaway said when the wine bottles were displayed on his patrol car. (5)


3. Appellant's Reference to Judge Burke as Her Lawyer


 After Callaway was arrested, she was placed in the back seat of Officer Robin's
patrol car. When the prosecutor asked the Officer if Callaway made any comments, he
responded that she had made a reference to a city Judge in Frisco. When the prosecutor
asked Officer Robin if appellant was "requesting anything at this point?", he said, "I believe
she requested to speak with [the Judge]. And my response was how do you know [the
Judge] and she said "he's my lawyer."

 Callaway did not object when this testimony was elicited, therefore error was not
preserved. See Tex. R. App. P. 33.1; Pena, 285 S.W.3d at 464. Even if Callaway had
objected to this testimony and received an adverse ruling, any error would have been
harmless. Defense counsel cross-examined (6) Officer Robin about what appellant said
when she was in his patrol car. No objection was made to this testimony. Thus, any error
in admitting Officer Robin's testimony about what appellant said in response to his question
about how she knew the Judge was rendered harmless because the jury heard the same
or similar testimony elsewhere during the trial. See id. 

4. Appellant's Statements Regarding Her Intoxication


 Officer Robin testified on direct-examination that when Callaway got out of her
vehicle, he asked her, among other questions, "[W]here are you coming from[?]." She told
him she was coming from "Martini Park." He testified she "pulled into the 7-Eleven parking
lot because she realized she was too drunk to drive, and she pulled into the parking lot to
sleep it off." He also testified she "felt that she did the right thing by pulling into the parking
lot because she was too drunk to drive." When appellant asked for a lawyer, Officer Robin
stopped questioning her and placed her under arrest for DWI.

 Appellant did not object when this testimony was elicited. Therefore, error, if any,
is not preserved. See Tex. R. App. P. 33.1; Pena, 285 S.W.3d at 464. Furthermore,
appellant's statements to Officer Robin were made prior to the time she invoked her right
to counsel. Even if appellant had objected to the complained-of testimony and received
an adverse ruling, the error would have been harmless. During the guilt-innocence phase,
defense counsel questioned (7) appellant about what she told Officer Robin about her state
of intoxication. No objection was made to this testimony. Thus, any error in admitting
Officer Robin's testimony about what appellant said in response to Officer Robin's question
about where she had been was rendered harmless because the jury heard the same or
similar testimony elsewhere during the trial. See id. Issue five is overruled.

V. Conclusion


 We affirm the trial court's judgment.



 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Concurring Memorandum Opinion 

by Justice Yañez.


Delivered and filed the 11th

day of February, 2010.
1. See also McLendon v. State, No. 04-96-00542-CR, 1998 WL 538208, at *4 (Tex. App.-San Antonio
Aug. 26, 1998, no pet.) (not designated for publication) (stating that "evidence establishing the DWI defendant
invoked a Miranda right is inadmissible as substantive evidence of guilt.") (citing Hardie v. State, 807 S.W.2d
319, 322 (Tex. Crim. App. 1991)).
2. Specifically, when the prosecutor asked Officer Robin, "What happened once you had her [appellant]
in front of your patrol vehicle?", he replied, "I said we're going to conduct some field sobriety tests; are you
willing to take the tests. And she said, no. I don't want to do that; I want to speak to a lawyer." Later in Officer
Robin's direct-examination, the prosecutor asked him, "Under your training as an officer, what were you
supposed to do at that point when she [appellant] was asking for an attorney in the field?". To this, he replied,
"When she--when they ask for her attorney, we basically stop all questioning. She is invoking her right to
remain silent essentially. So when she requested a lawyer, she requested a lawyer and she was placed under
arrest. . . ."
3. Except for fundamental errors, even constitutional guarantees can be forfeited by failing to properly
object at trial. Reyes v. State, 267 S.W.3d 268, 273 (Tex. App.-Corpus Christi 2008, pet. ref'd). The use of
an accused's silence as an admission of guilt is not fundamental error and can be waived absent a proper
objection in the trial court. Id. "Likewise, allowing a jury to hear that the defendant invoked his or her right to
counsel is not fundamental error." Id.
4. Specifically, defense counsel asked appellant:

 

 Counsel: The Prosecutor asked you about refusing to take the standardized field
sobriety tests?


 Appellant: Yes, sir.


 Counsel: When the officer asked you to perform those?


 Appellant: That's correct.


 Counsel: Did you, also, in connection with those when he requested the test, do you
recall asking whether you could talk to your attorney?


 Appellant: Many times, yes.


 While cross-examining Officer Robin, defense counsel asked him, "After she [appellant] woke up, she
wasn't slurring her speech, was she?" Officer Robin replied, "I said, do you want to take the field sobriety
tests. She said no. She said that she didn't have any weapons and wanted a lawyer. Wasn't a whole lot of
speech once she was out of her vehicle."
5. Defense counsel's cross-examination of Officer Robin proceeded as follows:


 Defense Counsel: Was there an exchange, conversation, between you and Ms.
Callaway when the items were placed on the hood of your car? It's
a yes or no question.


 Officer Robin: Yes. She made a comment.


 Defense Counsel: All right. And did she explain anything to you about why those items
were in her vehicle?


 Officer Robin: She stated that the small wine containers that were there were
warm, and they were there for a week.


 Defense Counsel: Did she tell you they were garbage? 


 Officer Robin: I don't recall if she said the term garbage, but I remember her
referencing that she said they were there for some time.


 * * *


 Defense Counsel: Okay. And when you placed those--or when those--the bottles
and the Coors container were put on the hood of her car, she
responded to that in an appropriate manner, did she not?


 Officer Robin: Depends on what you consider appropriate.


 Defense Counsel: She explained their presence in the vehicle?


 Officer Robin: She became argumentative, I guess you could say, or--


 Defense Counsel: What was she arguing with you about?


 Officer Robin: About the fact that the--at first the Coors box was not open. She
referenced the Coors box, she kept saying, that's not open, that's
not open. When I told her it's the wine bottles we're referring to,
she said that's been in there a week. She started--she used a
cuss word at us.


 * * *

 

 Defense Counsel: There was a Coors can in the car that was not open isn't that right?


 Officer Robin: I believe there was a Coors can.


 Defense Counsel: Okay. So all she was doing was telling you a fact that was true?


 Officer Robin: Correct.


 Defense Counsel: Okay. And there was a bottle that was unopened; correct?


 Officer Robin: There was one white Zinfandel that was not open.


 Defense Counsel: There was one that was half empty?


 Officer Robin: That is correct.


 Defense Counsel: Obviously had been opened?


 Officer Robin: That's correct.


 Defense Counsel: What she said was, they've been in a car for a while, they're warm;
right?


 Officer Robin: That's right.


 * * *


 Defense Counsel: So tell me what's argumentative or offensive about her explaining
to you about the two bottles and about the Coors can.


 Officer Robin: She was calm, but when the bottles came out, her demeanor
changed. She became, I guess, you know, argumentative in the
sense she raised her voice. You know, that's not open. You know,
that's not open, that one's not open. When I referenced it, well,
that's been there for two weeks, that's--you know, I'm not arguing
with her, but she's trying to argue the point that that bottle is not
open.


 Defense Counsel: Or make the point?


 Officer Robin: Or make the point, depending on which direction you're looking at
it.
6. Defense counsel's cross-examination of Officer Robin proceeded as follows:


 Defense Counsel: When she [appellant] talked to you about--was it Judge Burke?


 Officer Robin: Yes.


 Defense Counsel: Did you--did you get the impression that she was kind of throwing
a name around to try to intimidate you or she just happened to
know who Judge Burke was?


 Officer Robin: I don't think she did it in a manner to intimidate me. Several people
usually come across--they'll put a name out. It's just standard for
us to ask how do you know this person.


 Defense Counsel: And she told you Judge Burke is my attorney?


 Officer Robin: She did.


 Defense Counsel: Did you have any reason to doubt that?


 Officer Robin: I did not. 

 
7. When defense counsel was questioning appellant on direct-examination, he asked her, "At a few
points during the period of time that you were talking with [Officer Robin] you indicated to him that you were
intoxicated, you were drunk. Do you remember that?". To this, she replied, "Yes, I do." Later, when defense
counsel asked her, "You told [Officer Robin] [a] couple [of] times that you pulled over because you were tired. 
You said--at one point you said because I was intoxicated and you thought that was the right thing to do?";
she replied, "Like I said--". At that point, defense counsel asked her, "Is that right?", and she said, "Yes."