NUMBER 13-06-578-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


MICHAEL JOHN REYES, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the County Court at Law No. 1 of Hays County, Texas.


 


O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Benavides


Opinion by Justice Benavides



 A jury convicted appellant, Michael John Reyes, of attempted improper
photography, a misdemeanor offense. See Tex. Penal Code Ann. §§ 15.01, 21.15
(Vernon 2003). The trial court assessed a $4,000 fine and one year confinement in the
Hays County Jail, which was suspended and probated for two years. Reyes raises three
issues on appeal, arguing that: (1) the trial court erred by allowing the jury to hear Reyes
invoking his right to end a custodial interrogation; (2) the trial court abused its discretion
by granting the State's motion to strike the defendant's expert witness; and (3) the
evidence is legally and factually insufficient to support a guilty verdict. We affirm.

I. Background

 On June 20, 2004, thirteen-year-old C.M. was shopping with her parents at the
Tanger Outlet Mall in San Marcos, Texas. She was shopping in Rue 21, a clothing store
that sells clothing targeted at young females, and she was wearing a skirt while she
shopped. 

 Gladys De La Garza was also a customer at Rue 21. De La Garza testified that she
was approximately five feet away from C.M., who was looking at clothes, when she
witnessed Reyes crouch down on his knee directly behind C.M.. Reyes was so close to
C.M. that De La Garza initially thought they were there together. De La Garza then noticed
that Reyes had a cell phone in his hand. 

 Reyes's phone was a "flip phone," (1) which he had open and held with the face turned
outwards. De La Garza testified that she observed Reyes place the phone under C.M.'s
skirt and heard the phone's camera "click." De La Garza stated that when Reyes noticed
her moving towards them, he quickly got up and walked out of the store. 

 De La Garza then approached C.M. and stated that she thought Reyes had taken
a picture under her skirt. C.M. immediately began to cry and went to find her parents. 
C.M. and her parents returned to the store, and her mother began to ask around to
determine who had seen the incident. De La Garza then told C.M.'s mother what she
witnessed and described Reyes as wearing a cap and a t-shirt with an "I Force" logo. She
also informed them of the direction he took when he rushed out of the store.

 C.M.'s parents told the store clerk to call security and the police and then left Rue
21 to go look for Reyes. C.M.'s mother located Reyes in another store. C.M.'s mother
testified that when she approached Reyes, he was shaking. Unprovoked, he stated, "I
didn't do anything. I didn't take any pictures. I didn't do anything. Here is my phone." She
then grabbed the door to prevent him from leaving. However, Reyes pushed her to the
side and walked out. The security officer arrived at that point and was trying to ask Reyes
questions, but Reyes just ignored the officer and continued to walk away. The police
showed up shortly after and detained him.

 Officer Leonard was assigned to the outlet mall on the day in question and
responded to the call from the mall security. Officer Leonard first reported to Rue 21 with
Corporal Wellman, where C.M., her family, a security guard, and De La Garza were
present. Two other officers went to the other side of the mall to find Reyes. While at Rue
21, De La Garza and the security officer described Reyes as wearing a blue shirt with "I
Force" written largely on the back. Officer Leonard was only at Rue 21 for a short period
of time, and he left Corporal Wellman at the store and went to locate the other officers and
Reyes. 

 Officer Leonard testified that his purpose for going with the other officers and Reyes
was to ensure that they "had the right subject, that it was the right description, and then to
actually transport a witness to that location for identification." Once he met the other
officers, who had detained Reyes, Officer Leonard concluded that Reyes matched the
description that had been reported to him. Officer Leonard then transported De La Garza
to where Reyes was so that she could identify him.

 De La Garza positively identified Reyes to Officer Leonard, and Reyes was arrested. 
Upon arrest, the police seized Reyes's phone and examined his saved pictures. No
pictures of C.M. were found on his phone. (2) Reyes was then charged with felony improper
photography under section 21.15 of the Texas Penal Code, but that charge was reduced
to a misdemeanor attempt charge under Texas Penal Code section 15.01. Tex. Penal
Code Ann. §§ 15.01, 21.15. 

 The State filed a request for notice of expert witnesses on April 26, 2005. The trial
court conducted a hearing on June 14, 2005. At the hearing, Reyes's counsel, Anthony
Cantrell, orally informed the court and the district attorney present at the hearing, Heather
Youree, that the defense had an expert witness named JoAnne Murphey. Cantrell also
stated that he would provide the expert's address and phone number. Cantrell claims that
he gave Youree the information immediately after the hearing. 

 However, a different judge and a different district attorney appeared for trial on July
11, 2006. Before trial began, the State moved to strike Reyes's expert witness under
article 39.14(b) of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc.
Ann. art. 39.14(b) (Vernon Supp. 2008). The trial court held a hearing on the motion. The
State argued that Cantrell did not provide timely notice of an expert witness and claimed
that it was not given notice until the day before trial. The State further contended that
Cantrell exhibited bad faith because the request for notice was granted, and there was no
way to have anticipated an expert because there was no notice or any notation of an expert
in the file. 

 Cantrell contested the State's claims and argued that the oral notice he gave to
Youree at the June 14, 2005 hearing sufficed because he was not given written notice that
the trial court granted the State's motion for notice of defense experts. He further argued
that there was no bad faith because he complied with the timely notice requirement, and
the State should have anticipated the expert because the district attorney present at the
June hearing, Youree, was aware of the expert. Cantrell did not reference the transcript
for the June hearing at that point because the judge's regular court reporter was not
present at the time, and he was unaware of where the transcript was or whether she had
been present at the June hearing. However, Cantrell agreed to ask her at the lunch break
whether she had transcribed the June hearing. 

 The trial court granted the motion to strike, but it indicated that it would review the
transcript and revisit the ruling if the transcript demonstrated that Cantrell provided notice
of the expert. The parties did not discuss the expert witness again until a hearing that
occurred after Reyes was found guilty and right before sentencing. 

 During trial, the State introduced a video into evidence for identification purposes
and to corroborate Corporal Leonard's statement that Reyes was wearing an "I Force" shirt
when he was arrested at the mall. The video was recorded in the Hays County Justice
Center's investigation room the day after Reyes's arrest and was approximately three and
a half minutes long. 


 In the video, the camera appeared to be angled from the doorway. It showed
Officer Johnson in the room and Reyes's backside as he walked into the investigation room
with "I FORCE" printed largely across the back of his t-shirt. Reyes then sat in a chair
facing the doorway and remained there for the rest of the video. Officer Johnson began
to advise Reyes of his rights, but before he could finish, Reyes said, "I reserve the right not
to make any statements." Reyes, however, agreed to allow Officer Johnson to finish
advising him of his rights. When Officer Johnson finished, Reyes also invoked his right to
an attorney. 

 When the State first introduced the video, Cantrell objected and stated, "I object. 
We can't cross-examine Officer Johnson. No. 2, there is no relevance in this case. I am
invoking his right to counsel for this jury. He hasn't asked the guy what was he wearing. 
That's it. I object." When the State sought to admit the video into evidence, Cantrell
objected again stating, "Your Honor, we object and re-urge our objection that it violates
Crocker. We're not able to cross-examine Officer Johnson at this time[,] and it violates the
rulings of the Court of Criminal Appeals as well as the United States Supreme Court of
America." Both objections were overruled, and the jury watched the entire video and
listened to the accompanying audio. 

 During trial, the prosecution asked Officer Leonard questions about the content of
the video:

 Q: So, actually, really, the only thing that really is on that tape is a person
invoking his Constitutional rights and wanting to stop questioning and
ask for a lawyer, right?

 

 A: Being Mirandized by the detective and invoking his rights. 



Reyes's counsel did not object during this exchange. He also did not object when Officer
Leonard explained that an accused person invoking his rights does not indicate guilt:

 Q: Would you say that a person invoking his Constitutional right and
asking for a lawyer indicates guilt?

 

 A: No, sir.

 

 Q: If you were falsely accused of a crime, would you ask for a lawyer?

 

 A: Yes, sir.

 

 Q: There is nothing about that that the jury should read into it, right?

 

 A: No, sir.

 

 Q: It doesn't mean he's guilty because the investigator informs him of his
rights and he says, "I want to exercise my rights?"

 

 A: Yes, sir.

 

 Q: And part of the reason you wear that uniform is because you believe
in that, right? 


 A: Yes, sir.


 Reyes was found guilty at trial of attempted improper photography, and the County
Court at Law Number 1 of Hays County (3) imposed a $4,000 fine and one year confinement
in the Hays County Jail, which was suspended and probated for two years. Reyes now
appeals.

II. Invocation of Constitutional Rights

 By his first issue, Reyes argues that the trial court abused its discretion when it
allowed the jury to hear him invoking his rights in the video, in violation of the Fifth
Amendment to the United States Constitution and Article 1, Section 10 of the Texas
Constitution. U.S. Const. amend. V; Tex. Const. art. I, § 10. However, the State
contends that Reyes did not properly preserve this issue for appeal because he did not
object on these grounds at trial. We agree with the State. Evidence of a defendant
invoking his rights is inadmissible as evidence of guilt and is constitutional error. Hardie
v. State, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991). However, except for fundamental
errors, even constitutional guarantees can be forfeited by failing to properly object at trial. 
See Tex. Code Crim. Proc. Ann. art. 1.14(a) (Vernon 2005); Saldano v. State, 70 S.W.3d
873, 887 (Tex. Crim. App. 2002). (4) The court of criminal appeals has held that the use of
a defendant's silence as an admission of guilt is not fundamental error and can be waived
absent a proper objection in the trial court. Gibson v. State, 516 S.W.3d 406, 409 (Tex.
Crim. App. 1974). Likewise, allowing a jury to hear that the defendant invoked his or her
right to counsel is not fundamental error. See Cacy v. State, 901 S.W.2d 691, 699 (Tex.
App.-El Paso 1995, pet. ref'd). 

 To preserve for appeal an issue based on a ruling admitting evidence, the record
must contain a timely objection or motion to strike that states the "specific ground of
objection if the specific ground was not apparent from the context." Tex. R. Evid. 103(a)(1);
see also Tex. R. App. P. 33.1(a)(1)(A); Lankston v. State, 827 S.W.2d 907, 908 (Tex. Crim.
App. 1992). An objection that apprises the trial judge of the basis of the complaint is
sufficient to preserve error: 

 The standards of procedural default . . . are not to be implemented by
splitting hairs in the appellate courts. As regards specificity, all a party has
to do to avoid the forfeiture of a complaint on appeal is to let the trial judge
know what he wants, why he thinks himself entitled to it, and to do so clearly
enough for the judge to understand him at a time when the trial court is in a
proper position to do something about it. Of course, when it seems from
context that a party failed effectively to communicate his desire, then
reviewing courts should not hesitate to hold that appellate complaints arising
from the event have been lost.


Lankston, 827 S.W.2d at 909; Ketchum v. State, 199 S.W.3d 581, 593 (Tex. App.-Corpus
Christi 2006, pet. ref'd). Error is not preserved for appeal if the objection made at trial does
not correspond to the issue raised on appeal. Gallo v. State, 239 S.W.3d 757, 768 (Tex.
Crim. App. 2007); Heidelburg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). 

 On appeal, Reyes argues that the video was inadmissable because it showed him
invoking his constitutional rights to remain silent and to the assistance of counsel, and that
playing the video was improper bolstering of the State's witness, De La Garza. At trial,
Reyes objected on the basis of cross-examination and relevance and did not give any
indication that he was complaining that the audio allowed the jury to hear him invoke his
constitutional rights or that it bolstered De La Garza's testimony. Because Reyes's
complaints on appeal are not the same as those raised in the trial court, his complaints are
waived. Gallo, 239 S.W.3d at 768; see Gibson, 516 S.W.2d at 409; see also Valentine
v. State, No. 14-00-01035-CR, 2002 WL 392650, at *3 (Tex. App.-Houston [14th Dist.]
2002, no pet.) (not designated for publication) (failure to object to video on ground that it
showed defendant invoking rights waived issue on appeal).

 However, even if the correct objection had been made and overruled at trial, the
error would have been harmless. "[O]verruling an objection to evidence will not result in
reversal when other such evidence was received without objection, either before or after
the complained-of ruling. This rule applies whether the other evidence was introduced by
the defendant or the State." Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998);
see also Valentine, 2002 WL 392650, at *3. The jury heard Officer Leonard testify that the
video showed Reyes invoking his rights. He explained further that invoking one's rights
does not signify guilt and that he would exercise the same right if wrongly accused of a
crime. Reyes did not object to any of this testimony. Leday, 983 S.W.2d at 718; see also
Valentine, 2002 WL 392650, at *3. Accordingly, we overrule Reyes's first issue. 

III. Exclusion of Expert Witness

 Reyes argues that the trial court erroneously excluded his expert witness. Texas
Rule of Evidence 103(a)(2) states that when evidence is excluded, error cannot be
assigned unless "the substance of the evidence was made known to the court by offer, or
was apparent from the context within which questions were asked." Tex. R. Evid.
103(a)(2). The offering party must advise the court of the substance of the excluded
evidence by an offer as soon as practicable, but before the court's charge is read to the
jury. Tex. R. Evid. 103(b). An offer of proof can be in either question-answer form or a
brief statement by counsel that includes a "reasonably specific summary of the evidence
offered" and its relevance, if it is not apparent. Warren v. State, 969 S.W.2d 1, 2 (Tex.
Crim. App. 1998) (citing Love v. State, 861 S.W.2d 889, 901 (Tex. Crim. App. 1993));
McAfee v. State, 204 S.W.3d 868, 873 (Tex. App.-Corpus Christi 2006, pet ref'd). 

 In the instant case, no offer of proof was made before or during the guilt-innocence
phase of the trial. Cantrell's arguments regarding the expert were based on his timely
notice to the prosecution; he never asked to take the witness on voir dire, offered a report,
or otherwise informed the court of the subject-matter the expert intended to cover with her
testimony. Therefore, error was not preserved for appeal, and we find Reyes's second
issue is waived. (5) 

IV. Legal and Factual Sufficiency

 By his third issue, Reyes argues that the evidence is legally and factually insufficient
to support his conviction. Reyes contends that the evidence was insufficient to show that
(1) he had the criminal intent to accomplish the illegal act of improper photography for the
sexual gratification of any person, and that (2) he committed an act amounting to more
than a mere preparation that tended but failed to effect the commission of the offense. 

 When conducting a legal sufficiency review, the court must "examine the evidence
in the light most favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt." Jackson v.

Virginia, 443 U.S. 307, 318 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007). The jury, as the sole judge of the credibility of the witness, is free to believe or
disbelieve all or part of the witness's testimony. Jones v. State, 984 S.W.2d 254, 257 (Tex.
Crim. App.1998). We defer to "'the responsibility of the trier of fact to fairly resolve conflicts
in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts
to ultimate facts.'" Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting
Jackson, 443 U.S. at 318-19). The court on appeal does not engage in a second
evaluation of the weight and credibility of the evidence, but only ensures the jury reached
a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

 In contrast, when conducting a factual sufficiency review, the evidence is viewed in
a neutral light. Garza v. State, 213 S.W.3d 338, 344 (Tex. Crim. App. 2007). The verdict
is only to be set aside if (1) it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust; or (2) is against the greater weight or preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). While we may disagree with the jury's
conclusions, we must avoid substituting our judgment for that of the jury, particularly in
matters of credibility. Drichas, 175 S.W.3d at 799; see also Watson, 204 S.W.3d at 414.

 A person commits the offense of criminal attempt if that person, "with the specific
intent to commit an offense . . . does an act amounting to more than mere preparation that
tends but fails to effect the commission of the offense intended." Tex. Penal Code Ann.
§ 15.01(a). Intent may be inferred by the accused's acts, words, or conduct. Moore v.
State, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998); Rivera-Reyes v. State, 252 S.W.2d 781,
785 (Tex. App.-Houston [14th Dist.] 2002, no pet.); Parramore v. State, 853 S.W.2d 741,
745 (Tex. App.-Corpus Christi 1993, writ ref'd). "Additionally, intent is a fact question to
be determined by the trier of facts from all the facts and circumstances in evidence." 
Parramore, 853 S.W.2d at 745 (citing Hemphill v. State, 505 S.W.2d 560, 562 (Tex. Crim.
App. 1974)).

 In the instant case, the jury could logically infer that Reyes had the specific intent
to take an improper photograph of C.M. without her consent in order to gratify his sexual
desire. The jury heard eyewitness testimony from De La Garza explaining how she was
in close proximity to Reyes, witnessed him crouch down behind C.M. and extend his arm
with camera phone in-hand under her skirt while she was not looking, and heard a "click." 
De La Garza also testified that Reyes was startled when he realized he was being
observed. She further testified that Reyes immediately fled the store. Finally, C.M.'s
mother testified that Reyes uttered that he had not done anything or taken any pictures
before she even asked him anything. The jury heard eyewitness testimony from De La
Garza and from C.M.'s mother regarding Reyes's actions, words, and conduct during the
incident that could allow an inference of the requisite intent. 

 We likewise reject Reyes's challenge to the factual sufficiency of the evidence
supporting his conviction. Reyes intermingles his factual sufficiency argument with a
discussion of the doctrines of legal and factual impossibility. Legal impossibility exists
when an actor intends to commit a crime, but the completed act would not actually amount
to a crime. Lawhorn v. State 898 S.W.2d 886, 891 (Tex. Crim. App. 1995). Factual
impossibility exists where, due to a physical or factual condition unknown to the actor, the
attempted crime could not be completed. Id. Further, "if the intended end is a legally
proscribed harm, the failure to effect it because of the lack of a factual condition necessary
to its occurrence, is no defense (i.e. factual impossibility)." Id. at 892. 

 Reyes argues that it was legally impossible for him to have committed the crime
of improper photography. However, Reyes's intended act of taking a picture under C.M.'s
skirt without her consent, and with the intent to arouse or gratify his sexual desire,
constituted an actual crime. Therefore, legal impossibility is not applicable to this case. 
Further, Reyes concedes that factual impossibility is not a defense in the context of attempt
crimes. Based on the eyewitness testimony, the jury's guilty verdict hardly appears to be
so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust,
rendering the verdict factually insufficient. We overrule Reyes's third issue.

V. Conclusion

 Because we have overruled all of Reyes's issues, the judgment of conviction is
affirmed.


 ___________________________

 GINA M. BENAVIDES

 Justice


Publish.

See Tex. R. App. P. 47.2(b).


Opinion delivered and filed this

the 17th day of July, 2008.

1. A "flip phone" is a "cell phone with one hinged section that opens up for use and folds up when not
in use." Encarta Dictionary, available at http://encarta.msn.com/dictionary_561547107/flip_phone.html (last
visited June 29, 2008).
2. Two suggestive pictures of his girlfriend were found on his phone. 
3. The case was transferred to the Thirteenth Court of Appeals pursuant to a docket equalization order
issued by the Supreme Court of Texas. Tex. Gov't Code Ann. § 73.001 (Vernon 1998).
4. Fundamental errors include: (1) the denial of the right to counsel; (2) the denial of the right to a jury
trial; (3) the denial of ten days' preparation before trial for appointed counsel; (4) the absence of jurisdiction
over the defendant; (5) the absence of subject-matter jurisdiction; (6) the prosecution under a penal statute
that does not comply with the state constitution's separation of powers clause; (7) jury charge errors resulting
in egregious harm; (8) holding trials at a location other than the county seat; (9) prosecution under an ex post
facto law; and (10) comments by a trial judge which taint the presumption of innocence. Saldano v. State,
70 S.W.3d 873, 888-89 (Tex. Crim. App. 2002).
5. It is also noteworthy that the trial judge's ruling on the motion to strike was not final. The trial judge
asked to see the transcript of the June hearing at which Cantrell stated he provided notice of the expert
witness, and when that transcript was not immediately available, he indicated that he might still change his
mind once he reviewed the transcript. Therefore, Reyes was given further opportunity to present the pretrial
transcript to the trial judge showing that he had provided notice to the State of the expert, and to get a reversal
on the ruling. Reyes did not take that opportunity until after trial. 

 Also, Reyes argues in his brief that the expert's testimony "would [have] better aid[ed] the jury in their
assessment of punishment." However, Reyes was given the chance to present the expert at the punishment
stage of trial when the judge denied the State's motion in limine to not allow expert testimony from experts
that had not previously testified. Reyes did not present the expert witness's testimony during the punishment
phase. Because Reyes got what he requested--the opportunity to present expert testimony at the sentencing
stage--there is no error to review. Smith v. State, 907 S.W.2d 522, 532 (Tex. Crim. App. 1995).