

NUMBER 13-08-259-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CAROLINE KATHLEEN CALLAWAY,                    Appellant,

v.

THE STATE OF TEXAS,                               Appellee.

On appeal from the County Court at Law No. 3
of Collin County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Vela
Memorandum Opinion by Justice Vela**

A jury convicted appellant, Caroline Kathleen Callaway, of the offense of misdemeanor driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). The court assessed punishment at confinement for ninety days in jail, plus

an $850.00 fine. The sentence was suspended, and she was put on community supervision for one year. In five issues, she argues the court erred by 1) overruling her objection to the State's closing argument, 2) denying her request for a jury instruction, and 3) failing to exclude statements she made to the arresting officer. We affirm.

## I. FACTUAL BACKGROUND

On August 14, 2007, Callaway drove her Volkswagen to a bar called "Martini Park" in Plano, Texas. There, she drank three glasses of red wine, and at 10:50 p.m., began driving home. Ten minutes later, she pulled into the parking lot of a 7-Eleven on Dallas Parkway. About 1:30 a.m. the following morning, Frisco police officer Joseph Robin stopped at the 7-Eleven and saw Callaway sitting in the driver's seat of a Volkswagen. The vehicle was running with the driver's side window down, and Callaway was the only occupant. Although she "appeared to be asleep," Callaway was "slumped over," and her hands were in her purse. Officer Robin spoke to Callaway but could not wake her up. He testified that when he opened her door, "she seemed to wake up at that point and then immediately pass[ed] back out." He patted her on the back, and eventually she woke up. He asked her several times to exit the vehicle, but she did not comply. After asking her several times if she had been drinking, Callaway answered affirmatively. When she got out of the vehicle, he asked her how much she had to drink. She said, "[s]everal" and stated that she had been drinking red wine. When he searched her for weapons, "she placed her arms out at her side" and said, "[A]irplane--or airport." When he asked her what she was doing, she said, "[T]his is what you do at the airport." When Officer Robin asked her to do some field-sobriety tests, she refused and told him she wanted a lawyer. Officer Robin testified that Callaway had "bloodshot" eyes, "slurred speech," and the smell of

2

alcohol on her breath. She told him she had come from Martini Park and that she had "pulled into the 7-Eleven parking lot because she realized she was too drunk to drive, and to sleep it off." A half-empty bottle of wine was found in her vehicle. At trial, when asked whether appellant was intoxicated, Officer Robin stated "my opinion was that she was intoxicated. She was not able to operate a motor vehicle safely."

On direct examination, defense counsel asked Callaway whether she remembered telling Officer Robin that she was intoxicated. Callaway replied "yes, I do."

## II. JURY ARGUMENT

By her first and second issues, Callaway contends the trial court erred by overruling her objection to a remark made by the State during closing argument, and that the failure to sustain the objection deprived her of the right to confront her accusers under the Confrontation Clause and the Sixth Amendment to the United States Constitution. We will address both issues together.

### A. Standard of Review

"'It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper.'" *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (quoting *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973)). The four permissible areas of jury argument are: "(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Id.* "[E]rror exists when facts not supported by the record are interjected in the argument, but such error is not reversible unless, in light of the record, the argument is extreme or manifestly improper." *Id.* "In determining whether jury argument is extreme or manifestly

3

improper, we look at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1993). We must consider counsel's remarks during closing argument in the context in which they appear. *Drew v. State*, 743 S.W.2d 207, 220 (Tex. Crim. App. 1987); *Ayala v. State*, 267 S.W.3d 428, 433 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd).

The Sixth Amendment protects a defendant's right to confront and cross-examine witnesses against him. U.S. Const. amend VI; *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). This right is violated when appropriate cross-examination is limited. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). In *Crawford v. Washington*, the Supreme Court stated that the Confrontation Clause of the Sixth Amendment bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53-54 (2004).

*B. Context of the Complained-Of Remark*

During Callaway's guilt-innocence closing argument, her counsel argued to the jury:

I'm not here to tell you that I support her [Callaway's] decision to pull off the highway and go to sleep at 1:30 in the morning or eleven o'clock at night. May not be the smartest thing in the world, but it's not against the law to do it. Y'all know that it's done a lot. . . . It happens a lot. It is not against the law.

And, in fact, law enforcement sometimes encourages it so that people don't fall asleep at the wheel and cause accidents. She [appellant] said I was trying to do the right thing. I was trying to do the right thing. And now, the State of Texas wants to take her freedom away from her for doing the right thing.

4

After counsel finished his closing argument, the prosecutor argued, in relevant part:

> Ladies and gentleman, this case is about taking responsibility, about taking responsibility at the beginning and at the end. . . . Is this right? Is this fair and is this justice for someone to drive from the Martini bar down—up Dallas Parkway, loop around, and stop at 7-Eleven because she was too drunk to drive?

\* \* \*

> *You don't reward the Defendant because she barely sideswiped a couple of cars.*

To the italicized remark, defense counsel objected as follows: "There is absolutely no evidence about sideswiping cars. That's outside the record. That's unsworn testimony. I object. It denies us our right to cross-examine and confront witnesses." In response to the objection, the prosecutor argued, "[T]he State is not alleging that this did happen. It's an argument of trying to reward the defendant based upon a reward for not doing that." The trial court overruled the objection, and the prosecutor continued his argument to the jury:

> Do you reward her [appellant] for driving while intoxicated up to a point at 7-Eleven? Do you reward her for driving northbound on Dallas Parkway, pulling over because she was too drunk to drive? Do you reward her because she's asleep at the wheel at 7-Eleven at 1:25 when she has claimed that she's not intoxicated? According to her on the stand. You do not reward her for these actions by letting her go. You hold her responsible for her actions. She said she was drunk. She said she was intoxicated. She said she drove to 7-Eleven. You hold her responsible because in Collin County we hold people responsible for their actions.

\* \* \*

> Do you or would you reward a complete drunk person just because they got to their home? They committed the offense. The elements were met. Beyond a reasonable doubt, ladies and gentlemen. Beyond a reasonable doubt. She's guilty of driving while intoxicated.

*C. Analysis*

The prosecutor's remark that Callaway sideswiped two cars on her way from Martini Park to the 7-Eleven was clarified when he explained that "the State is not alleging that this did happen. It's an argument of trying to reward the defendant based upon a reward for not doing that." Thus, the prosecutor was not interjecting facts not supported by the record, and he was not referring to testimonial statements of a witness who did not appear at trial. Such testimony is barred by the Confrontation Clause. *See Crawford*, 541 U.S. at 53-54. Earlier, defense counsel had argued to the jury that "law enforcement sometimes encourages it [drivers to pull off the highway] so that people don't fall asleep at the wheel and cause accidents." Defense counsel argued that appellant "was trying to do the right thing[]" by stopping at the 7-Eleven and that the State wanted to take appellant's "freedom away from her for doing the right thing." Put in context, the remark was an attempt to argue to the jury that just because a driver does the right thing by pulling off the road to sleep, thereby avoiding a serious collision, the driver should not be rewarded by a verdict of not guilty. Accordingly, we conclude that the prosecutor was answering defense counsel's argument and making a plea for law enforcement, both of which constitute proper jury argument. *See Brown*, 270 S.3d at 570 (stating that "answer to the argument of opposing counsel" and "plea for law enforcement" constitute proper jury argument). Although it is possible to construe the objected-to remark as being improper when taken out of its full context, the remark, when put it context, is not improper. Even if the remark could be viewed as improper, we cannot conclude that there was a willful and calculated effort to deprive Callaway of a fair and impartial trial. *See Cantu*, 939 S.W.2d at 633. Thus, the trial court did not err by overruling the objection. Issues one and two are

6

overruled.

## II. JURY INSTRUCTION ON CORROBORATION

In issue three, Callaway contends the trial court erred in not instructing the jury about the corpus delicti rule for the corroboration of a defendant's extrajudicial admissions. After both sides rested and closed, defense counsel requested the trial court to include an instruction in the charge "that the admission of the defendant cannot be used by itself to establish the element, corpus delicti of an offense, and that the defendant's admission has to be corroborated before it can be used to establish any element of the offense." The trial court denied the requested instruction.

### A. Standard of Review

Appellate review of an error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1991). First, we determine whether there was error in the charge. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g). If so, "the next step is to make an evidentiary review . . . as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused." *Id*.

### B. Applicable Law

The corpus delicti rule is a rule of evidentiary sufficiency, meaning that an extrajudicial confession of wrongdoing, standing alone, is not enough to support a conviction; other evidence must exist showing that a crime has in fact been committed. *Rocha v. State*, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000) (citing *Williams v. State*, 958 S.W.2d 186, 190 (Tex. Crim. App. 1997)). "This other evidence is commonly referred to

7

as the 'corpus delicti.'" *Id.* "This other evidence need not be sufficient by itself to prove the offense: 'all that is required is that there be some evidence which renders the commission of the offense more probable than it would be without the evidence.'" *Id.* (quoting *Williams,* 958 S.W.2d at 190). "[A] trial judge need not instruct the jury on corroboration when the corpus delicti is established by other evidence." *Baldree v. State,* 784 S.W.2d 676, 686-87 (Tex. Crim. App. 1989). The corpus delicti of DWI "is that someone drove or operated a motor vehicle in a public place while intoxicated." *Layland v. State,* 144 S.W.3d 647, 651 (Tex. App.–Beaumont 2004, no pet.).

*C. Analysis*

Appellant testified that she drove from Plano to a 7-Eleven, where she parked her vehicle. Officer Robin testified that this 7-Eleven is located on a public road. Accordingly, evidence other than Callaway's extrajudicial admission established the first two elements of the corpus delicti of the offense. *See Layland,* 144 S.W.3d at 651. Other than Callaway's extrajudicial admissions about her intoxication, there is some other evidence which renders the intoxication element of the corpus delicti more probable than it would be without the evidence: (1) Callaway testified she drank three glasses of red wine and then left Martini Park about 10:50 p.m., arriving at the 7-Eleven about 11:00 p.m.; (2) at 1:30 a.m., Officer Robin saw Callaway slumped over in the driver's seat of her vehicle; (3) Callaway did not wake up when Officer Robin tried to wake her; (4) when he opened her door, "she seemed to wake up at that point and then immediately pass[ed] back out;" (5) he asked her several times to exit the vehicle, but she did not comply; (6) when he searched her, "she placed her arms out at her side" and said, "[A]irplane--or airport;" (7)

8

she had bloodshot eyes, slurred speech, and her breath smelled of alcohol; (8) a half-empty bottle of wine was in her vehicle; and (9) Officer Robin testified that, in his opinion, she was intoxicated and not able to operate a motor vehicle safely. Because the other evidence, independent of Callaway's admission, rendered the corpus delicti of DWI more probable than it would be without the evidence, we hold that the trial court did not err in refusing to instruct the jury on independent corroboration of her admission to Officer Robin that she was intoxicated. Issue three is overruled.

## IV. INVOCATION OF CONSTITUTIONAL RIGHTS

In issue four, Callaway contends that the trial court erred in refusing to exclude evidence showing that she had invoked her right to counsel and her right to remain silent. Defense counsel filed a pre-trial motion in limine, requesting the trial court to order the prosecution not to offer into evidence: 1) any statements made by appellant following the invocation of her right to counsel or her right to remain silent; and 2) any testimony relating to any such statements. At a pre-trial hearing, the trial court denied the motion as it pertained to appellant's invocation of these rights during her encounter with Officer Robin at the 7-Eleven.

### A. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.*

9

"Under the Fifth Amendment, a right to counsel exists as a prophylactic protection of the right to remain silent; in other words, it exists to counteract the inherent pressures of custodial interrogation." *Garcia v. State*, 191 S.W.3d 870, 877 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (citing U.S. CONST. amend. V; *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991)). Once a suspect asserts his or her Fifth Amendment right, he or she cannot be interrogated outside the presence of counsel unless the suspect initiates the contact. *Id*. (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). "An individual may not be penalized for exercising his Fifth Amendment rights when he is under police investigation; evidence of his invocation of his right to counsel is inadmissible as evidence of guilt." *Kalisz v. State*, 32 S.W.3d 718, 721 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) (citing *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991)). Courts have also held that the invocation of the right to remain silent cannot be admitted as evidence of guilt. *See Cooper v. State*, 961 S.W.2d 222, 226 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd) (stating that "[e]vidence of invoking the right to terminate an interview is inadmissible as evidence of guilt") (citing *Hardie*, 807 S.W.2d at 322).[1]

Here, the evidence showed that Callaway was under investigation by Officer Robin. Therefore, evidence of her invocation of her right to counsel, which includes her right to remain silent, is inadmissible as evidence of guilt. *See Kalisz,* 32 S.W.3d at 721; *Cooper*, 961 S.W.2d at 226.

---

[1]*See also McLendon v. State*, No. 04-96-00542-CR, 1998 WL 538208, at *4 (Tex. App.–San Antonio Aug. 26, 1998, no pet.) (not designated for publication) (stating that "evidence establishing the DWI defendant invoked a *Miranda* right is inadmissible as substantive evidence of guilt.") (citing *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991)).

*B. Preservation of Error*

Callaway complains that during the State's direct-examination of Officer Robin, the State elicited testimony[2] that she invoked her right to counsel. Rule 33.1 of the Texas Rules of Appellate Procedure governs preservation of error, and states, in part:

(a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context;

Tex. R. App. P. 33.1.

"The complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale." *Pena v. State*, 285 S.W.3d 459, 463-64 (Tex. Crim. App. 2009). "To avoid forfeiting a complaint on appeal, the party must 'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Id*. at 464 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). Here, no objection was made to Officer Robin's testimony. Thus, Callaway did not clearly

---

[2]Specifically, when the prosecutor asked Officer Robin, "What happened once you had her [appellant] in front of your patrol vehicle?", he replied, "I said we're going to conduct some field sobriety tests; are you willing to take the tests. And she said, no. I don't want to do that; I want to speak to a lawyer." Later in Officer Robin's direct-examination, the prosecutor asked him, "Under your training as an officer, what were you supposed to do at that point when she [appellant] was asking for an attorney in the field?". To this, he replied, "When she--when they ask for her attorney, we basically stop all questioning. She is invoking her right to remain silent essentially. So when she requested a lawyer, she requested a lawyer and she was placed under arrest. . . ."

convey to the trial court "the precise and proper application of the law as well as the underlying rationale." *See id.* at 463-64. Furthermore, "[a] motion in limine, whether granted or denied, preserves nothing for appellate review." *Griggs v. State*, 213 S.W.3d 923, 926 n.1 (Tex. Crim. App. 2007). Therefore, Callaway did not preserve error.[3] *See* Tex. R. App. P. 33.1.

Even if Callaway had objected to Officer Robin's complained-of testimony and received an adverse ruling, any error was harmless. "'[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the other evidence was introduced by the defendant or the State.'" *Reyes v. State*, 267 S.W.3d 268, 274 (Tex. App.–Corpus Christi 2008, pet. ref'd) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). Here, during redirect-examination of appellant and during cross-examination of Officer Robin, defense counsel elicited testimony[4] that appellant invoked

---

[3]Except for fundamental errors, even constitutional guarantees can be forfeited by failing to properly object at trial. *Reyes v. State*, 267 S.W.3d 268, 273 (Tex. App.–Corpus Christi 2008, pet. ref'd). The use of an accused's silence as an admission of guilt is not fundamental error and can be waived absent a proper objection in the trial court. *Id.* "Likewise, allowing a jury to hear that the defendant invoked his or her right to counsel is not fundamental error." *Id.*

[4]Specifically, defense counsel asked appellant:

| | |
|---|---|
| Counsel: | The Prosecutor asked you about refusing to take the standardized field sobriety tests? |
| Appellant: | Yes, sir. |
| Counsel: | When the officer asked you to perform those? |
| Appellant: | That's correct. |
| Counsel: | Did you, also, in connection with those when he requested the test, do you recall asking whether you could talk to your attorney? |
| Appellant: | Many times, yes. |

12

her right to counsel. No objection was made to this testimony. Thus, any error in admitting Officer Robin's testimony that appellant invoked her right to counsel was rendered harmless because the jury heard testimony elicited by defense counsel that appellant invoked her right to counsel. *See Reyes,* 267 S.W.3d at 274 (holding that even if trial court had overruled accused's objection that audio portion of a videotape allowed the jury to hear him invoke his rights to counsel and to remain silent, error would have been harmless because jury heard testimony that accused invoked these rights). Issue four is overruled.

In issue five, Callaway contends the trial court erred in refusing to exclude statements she made to Officer Robin in response to his interrogation of her after she invoked her right to counsel.

*A. Applicable Law*

"The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). "For *Miranda* safeguards to attach, two threshold issues must be met: 1) the suspect must have been 'in custody,' and 2) the police must have 'interrogated' the suspect." *Little v. State,* 853 S.W.2d 179, 183 (Tex. App.–Corpus Christi 1993, no pet.). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely

---

While cross-examining Officer Robin, defense counsel asked him, "After she [appellant] woke up, she wasn't slurring her speech, was she?" Officer Robin replied, "I said, do you want to take the field sobriety tests. She said no. She said that she didn't have any weapons and wanted a lawyer. Wasn't a whole lot of speech once she was out of her vehicle."

to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980) (footnotes omitted). The Fifth Amendment "bar[s] police-initiated interrogation of an accused who, in the context of custodial interrogation, has previously asserted his right to counsel during such interrogation, unless the accused's counsel is actually present." *Hughen v. State*, Nos. PD-1123-08, 1124-08, 2009 WL 3189187, at *4 (Tex. Crim. App. Oct. 7, 2009) (citing *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990)).

Article 38.22 of the code of criminal procedure generally precludes the use of statements that result from custodial interrogation absent compliance with its procedural safeguards. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 2005). However, Article 38.22, Section 5 specifically exempts "a statement that does not stem from custodial interrogation. . . ." *Id*. § 5. Thus, if appellant's statements did not stem from custodial interrogation, neither *Miranda* nor Article 38.22 require their exclusion. *Morris v. State*, 897 S.W.2d 528, 531 (Tex. App.–El Paso 1995, no pet.) (citing *Galloway v. State*, 778 S.W.2d 110, 112 (Tex. App.–Houston [14th Dist.] 1989, no pet.)).

*B. Analysis*

Callaway complains that the trial court should have excluded Officer Robin's testimony about: 1) "her refusal to perform the standardized field sobriety tests[;]" 2) "her denial that some bottles of wine found in her vehicle were opened[;]" 3) "her reference to Judge Burke as being her lawyer[;]" and 4) "her statements that 'she was intoxicated' and that 'she was too drunk to drive.'" We address each complaint separately.

*1. Refusal to Perform Field-Sobriety Tests*

The record reflects that Callaway invoked her right to counsel *after* she refused Officer Robin's request to take the field-sobriety tests. Nevertheless, Callaway did not object when the prosecutor elicited testimony from Officer Robin that appellant refused to take the field-sobriety tests. Therefore, appellant did not preserve error. *See* TEX. R. APP. P. 33.1; *Pena,* 285 S.W.3d at 464. Accordingly, even if appellant had preserved this complaint for review, police requests for performing sobriety tests do not constitute interrogation. *Smith v. State*, 105 S.W.3d 203, 207 (Tex. App.–Houston [14th Dist.] pet. ref'd) (citing *Kalisz,* 32 S.W.3d at 721). Thus, assuming Callaway was in custody when Officer Robin asked her to take the field-sobriety tests, her response that she did not want to take them did not result from interrogation. *See id*. Because the "interrogation" predicate is not met, neither *Miranda* nor Article 38.22 require exclusion of appellant's refusal to take the field-sobriety tests. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5; *Little*, 853 S.W.2d at 183.

*2. Testimony About the Wine Bottles Found in Appellant's Vehicle*

The record reflects that after Callaway requested an attorney, Officer Robin arrested her outside the 7-Eleven for DWI. Before he transported her to the police station, other officers searched her vehicle. When the prosecutor asked Officer Robin, "Were any items from her [Callaway's] vehicle placed on your patrol car?", he replied, "Yes, they were." When asked what those items were, Officer Robin stated, "It was a[n] empty box of Coors Light, and two bottles of wine. White Zinfandel wine. One was sealed closed and the other was open and half empty." When the prosecutor asked Officer Robin, "[Did] [t]he

defendant say anything in response to seeing those items on your patrol vehicle?", he said:

> She responded and said that that's not open. And when she said that, I said—I looked at her and I said are you telling me that's not open, and she said, yes, the box is, but the Coors Light is not open. I said we're not referring to the Coors Light; I said we're referring to the bottle of wine.

Appellant did not object when this testimony was elicited, and therefore did not preserve error. *See* TEX. R. APP. P. 33.1; *Pena,* 285 S.W.3d at 464. However, even if appellant had objected to this testimony and received an adverse ruling, the error would have been harmless because defense counsel cross-examined Officer Robin about what Callaway said when the wine bottles were displayed on his patrol car.[5]

---

[5]Defense counsel's cross-examination of Officer Robin proceeded as follows:

| | |
|---|---|
| Defense Counsel: | Was there an exchange, conversation, between you and Ms. Callaway when the items were placed on the hood of your car? It's a yes or no question. |
| Officer Robin: | Yes. She made a comment. |
| Defense Counsel: | All right. And did she explain anything to you about why those items were in her vehicle? |
| Officer Robin: | She stated that the small wine containers that were there were warm, and they were there for a week. |
| Defense Counsel: | Did she tell you they were garbage? |
| Officer Robin: | I don't recall if she said the term garbage, but I remember her referencing that she said they were there for some time. |
| | * * * |
| Defense Counsel: | Okay. And when you placed those—or when those—the bottles and the Coors container were put on the hood of her car, she responded to that in an appropriate manner, did she not? |
| Officer Robin: | Depends on what you consider appropriate. |
| Defense Counsel: | She explained their presence in the vehicle? |
| Officer Robin: | She became argumentative, I guess you could say, or— |
| Defense Counsel: | What was she arguing with you about? |

16

| | |
|---|---|
| Officer Robin: | About the fact that the—at first the Coors box was not open. She referenced the Coors box, she kept saying, that's not open, that's not open. When I told her it's the wine bottles we're referring to, she said that's been in there a week. She started—she used a cuss word at us. |

      \* \* \*

| | |
|---|---|
| Defense Counsel: | There was a Coors can in the car that was not open isn't that right? |
| Officer Robin: | I believe there was a Coors can. |
| Defense Counsel: | Okay. So all she was doing was telling you a fact that was true? |
| Officer Robin: | Correct. |
| Defense Counsel: | Okay. And there was a bottle that was unopened; correct? |
| Officer Robin: | There was one white Zinfandel that was not open. |
| Defense Counsel: | There was one that was half empty? |
| Officer Robin: | That is correct. |
| Defense Counsel: | Obviously had been opened? |
| Officer Robin: | That's correct. |
| Defense Counsel: | What she said was, they've been in a car for a while, they're warm; right? |
| Officer Robin: | That's right. |

      \* \* \*

| | |
|---|---|
| Defense Counsel: | So tell me what's argumentative or offensive about her explaining to you about the two bottles and about the Coors can. |
| Officer Robin: | She was calm, but when the bottles came out, her demeanor changed. She became, I guess, you know, argumentative in the sense she raised her voice. You know, that's not open. You know, that's not open, that one's not open. When I referenced it, well, that's been there for two weeks, that's—you know, I'm not arguing with her, but she's trying to argue the point that that bottle is not open. |
| Defense Counsel: | Or make the point? |
| Officer Robin: | Or make the point, depending on which direction you're looking at it. |

17

*3. Appellant's Reference to Judge Burke as Her Lawyer*

After Callaway was arrested, she was placed in the back seat of Officer Robin's patrol car. When the prosecutor asked the Officer if Callaway made any comments, he responded that she had made a reference to a city Judge in Frisco. When the prosecutor asked Officer Robin if appellant was "requesting anything at this point?", he said, "I believe she requested to speak with [the Judge]. And my response was how do you know [the Judge] and she said "he's my lawyer."

Callaway did not object when this testimony was elicited, therefore error was not preserved. *See* TEX. R. APP. P. 33.1; *Pena*, 285 S.W.3d at 464. Even if Callaway had objected to this testimony and received an adverse ruling, any error would have been harmless. Defense counsel cross-examined[6] Officer Robin about what appellant said when she was in his patrol car. No objection was made to this testimony. Thus, any error in admitting Officer Robin's testimony about what appellant said in response to his question

---

[6]Defense counsel's cross-examination of Officer Robin proceeded as follows:

| Defense Counsel: | When she [appellant] talked to you about—was it Judge Burke? |
|---|---|
| Officer Robin: | Yes. |
| Defense Counsel: | Did you—did you get the impression that she was kind of throwing a name around to try to intimidate you or she just happened to know who Judge Burke was? |
| Officer Robin: | I don't think she did it in a manner to intimidate me. Several people usually come across—they'll put a name out. It's just standard for us to ask how do you know this person. |
| Defense Counsel: | And she told you Judge Burke is my attorney? |
| Officer Robin: | She did. |
| Defense Counsel: | Did you have any reason to doubt that? |
| Officer Robin: | I did not. |

about how she knew the Judge was rendered harmless because the jury heard the same or similar testimony elsewhere during the trial.  *See id.*

*4. Appellant's Statements Regarding Her Intoxication*

Officer Robin testified on direct-examination that when Callaway got out of her vehicle, he asked her, among other questions, "[W]here are you coming from[?]."  She told him she was coming from "Martini Park."  He testified she "pulled into the 7-Eleven parking lot because she realized she was too drunk to drive, and she pulled into the parking lot to sleep it off."  He also testified she "felt that she did the right thing by pulling into the parking lot because she was too drunk to drive."  When appellant asked for a lawyer, Officer Robin stopped questioning her and placed her under arrest for DWI.

Appellant did not object when this testimony was elicited.  Therefore, error, if any, is not preserved.  *See* TEX. R. APP. P. 33.1; *Pena,* 285 S.W.3d at 464. Furthermore, appellant's statements to Officer Robin were made prior to the time she invoked her right to counsel.  Even if appellant had objected to the complained-of testimony and received an adverse ruling, the error would have been harmless.  During the guilt-innocence phase, defense counsel questioned[7] appellant about what she told Officer Robin about her state of intoxication.  No objection was made to this testimony.  Thus, any error in admitting Officer Robin's testimony about what appellant said in response to Officer Robin's question about where she had been was rendered harmless because the jury heard the same or

---

[7]When defense counsel was questioning appellant on direct-examination, he asked her, "At a few points during the period of time that you were talking with [Officer Robin] you indicated to him that you were intoxicated, you were drunk.  Do you remember that?".  To this, she replied, "Yes, I do." Later, when defense counsel asked her, "You told [Officer Robin] [a] couple [of] times that you pulled over because you were tired. You said—at one point you said because I was intoxicated and you thought that was the right thing to do?"; she replied, "Like I said--".  At that point, defense counsel asked her, "Is that right?", and she said, "Yes."

similar testimony elsewhere during the trial. *See id.* Issue five is overruled.

## V. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Concurring Memorandum Opinion
by Justice Yañez.

Delivered and filed the 11th
day of February, 2010.