

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MANUEL RODRIGUEZ, | § | No. 08-23-00287-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 187th Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | § | Of Bexar County, Texas |
| | § | |
| Appellee. | § | (TC# 2023-CR-6330) |
| | § | |

**MEMORANDUM OPINION**

A jury convicted Appellant Manuel Rodriguez of two counts of sexual assault of a child under the age of 17 years and one count of indecency with a child under the age of 17, but acquitted him of a fourth charge of continuous sexual abuse of a child under 14 years of age. On appeal, Appellant argues the trial court abused its discretion in (1) allowing a SANE nurse to provide testimony he contends was hearsay, "bolstered" the child-victim's testimony, and was outside the scope of permitted expert testimony; and (2) allowing a detective to express his opinion regarding the "believability" of the child-victim's statements. For the reasons set forth below, we affirm.[1]

---

[1] This case was transferred from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization

1

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The instances of abuse

The child-victim, C.R., who was born in 2002, testified that Appellant began dating her mother when she was approximately five or six years old.[2] C.R. recalled that shortly thereafter, she and her mother and three brothers moved into Appellant's home, where he lived with his adult daughter and two sons. Appellant and her mother subsequently married and had a son together in 2010.

C.R. recalled that when she was "younger," Appellant would often rub her back, but his touching escalated in 2014 or 2015, when she was in sixth grade. According to C.R., Appellant began rubbing her back from the top "all the way down [her] butt," would "put his hands from [her] butt to [her] vagina," would touch her anus, and would touch "around" or "above" her vagina. She testified that his conduct escalated even more when she was 12 or 13 years old, recalling he would "put his fingers in [her] vagina," "put his mouth on [her] vagina," and have her "touch his penis."

C.R. reported Appellant would "do these things" when they were alone, and the abuse often occurred in the mornings after her mother and siblings left the house, while she was alone with him for approximately an hour before she left for school. She described other instances of abuse that occurred in his bedroom, recalling one occasion when he told her to recline on his bed, took off her shorts and underwear, then put "his fingers in [her] vagina" and "his mouth on [her]

---

order. *See* Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

[2] To protect the identity of the victim, who was a juvenile at the time, we refer to her by the initials, C.R., in place of her name. *See* Tex. R. App. P. 9.10.

vagina." She also recalled that when she was 14 years old and in the seventh or eighth grade, he put his penis on her mouth once or twice, and she "would kind of push away." Thinking no one would believe her, C.R. did not tell anyone about the abuse.

C.R. recalled informing Appellant when she was about 15 that she did not want to participate in these activities any longer, and no abuse occurred after that time. However, she testified that Appellant "persisted" in his efforts to meet alone with her, often texting her late at night and early in the morning. At trial, the State introduced C.R.'s cell phone screenshots of various text messages Appellant sent her from September 2017 through June 2018. In the messages, Appellant repeatedly asked C.R. for "5 mins of [her] time," asked her to "come lay with [him] for a bit," and told her he "need[ed]" her, loved her, and "miss[ed]" her, even though they were living in the same house. Appellant further texted her: "All it takes is a few minutes of your time. You don't have to do anything[.] Just lay there." C.R. ignored most of his texts and said no to his requests to meet with her, at one point telling him: "I don't want to so it stays no." Appellant persisted, repeatedly asking C.R. to respond and telling her, "I wish you would stop saying no." Appellant repeatedly asked C.R. why she was saying no, why she no longer wanted to "play[]," whether it felt "good," and whether she liked it, repeatedly saying he knew it had felt good to her.

The State introduced a text message Appellant sent C.R. on an undisclosed date asking her to delete all their conversations and photographs, and even delete him as a contact on her phone.[3] Though she told Appellant she had done so, she retained the text messages that were introduced in evidence.

---

[3] At trial, Appellant acknowledged asking her to delete their conversations, contending he did so because they were in an "argument[]" at the time. He also recalled deleting everything related to C.R. and her family from his cell phone after law enforcement contacted him about C.R.'s allegations, explaining that he no longer wanted to have contact with any of them due to her outcry.

**B. C.R.'s outcry**

In March 2020, C.R.'s mother found a photograph of C.R. in her underwear on Appellant's cell phone. Her mother testified that when she saw the photograph, she immediately confronted Appellant and asked him to leave the house. According to C.R., before he left, Appellant came to her room to tell her about the photograph, claiming that it was an "innocent" photo and "nothing serious." However, he then told C.R. not to tell her mom about what was "happening," and he wanted to make sure she "wouldn't say anything to [her] mom."

C.R. recalled that when her mother told her about the photograph, she asked if "there was anything going on" between C.R. and Appellant, to which C.R. responded that she thought Appellant was "in love with [her]" and viewed her "more as a girlfriend than a daughter." C.R. further recalled telling her mother Appellant had been sexually assaulting her, but she did not provide details of the abuse at that time. C.R.'s mother confirmed at trial that C.R. told her about "some of the things" Appellant had done, including times when Appellant would "lay in the bed with [C.R.] and try getting her to mess with him" and try "to put his hand in [her] shorts." She believed, however, that Appellant's attempts were "unsuccessful," as C.R. had told him no.

C.R.'s mother contacted the police, and she and C.R. initially met with a patrol officer and later with Detective Edward Sandoval from the local police department's SVU unit. Detective Sandoval testified that after taking statements from C.R. and her mother, he arranged a forensic interview at ChildSafe, a children's advocacy center. Detective Sandoval watched on a monitor when the forensic interviewer spoke with C.R. However, he did not testify at trial regarding any of the statements C.R. made to him or the forensic interviewer.

Detective Sandoval testified that, as part of his investigation, he collected text messages

4

from C.R.'s phone. However, he did not take her phone into evidence, as it is not his standard practice to do so.

## C. The SANE nurse's exam

In May 2020, C.R. was examined by Annette Antos, a SANE (sexual assault nurse examiner) nurse at Children of Miracles, another child advocacy center in Bexar County. Nurse Antos testified that she took a detailed narrative history from C.R. for purposes of arriving at a medical diagnosis and treatment. She recalled C.R. informing her that Appellant had sexually abused her from the time she was 12 until she was 15, describing three incidents—one in which Appellant put his mouth to her vaginal area, another in which inserted his finger into her vagina, and another in which he put his penis inside her mouth. According to Nurse Antos, C.R. informed her that Appellant also asked her to touch his penis and became upset when she refused to do so. C.R. explained to Nurse Antos that she did not report Appellant's abuse earlier because she thought no one would believe her, and she made her outcry after her mother found a photograph of her on Appellant's phone.

Nurse Antos testified that C.R. tested negative for sexually transmitted diseases, and her medical examination—which included examining the tissue surrounding the entrance to the vagina for trauma, such as bruising or tearing—came back normal. Nurse Antos testified, however, that because she handles "nonacute" abuse cases that have occurred more than five days prior to the exam, most, but not all, of the exams she performs are "normal," as would be expected under such circumstances.

## D. Appellant's indictment and trial

Appellant was initially indicted in September 2021 on one count of continuous sexual

abuse of a child under 14 years of age and one count of sexual abuse of a child. But an amended indictment was filed against him in July 2023 alleging six separate counts, two of which the State later waived. The jury was asked to determine Appellant's guilt on the following four counts: (1) continuous sexual abuse of a child under the age of 14 for acts allegedly committed from August 2014 to August 2016; (2) two counts of sexual abuse of a child under 17, occurring on or about May 1, 2017, for intentionally and knowingly causing C.R.'s sexual organ to contact Appellant's mouth, and for intentionally and knowingly causing C.R.'s mouth to contact Appellant's sexual organ; and (3) one count of indecency with a child under 17 for touching a part of C.R.'s genitals "with the intent to arose or gratify the sexual desire of any person."

At trial, Appellant denied all of C.R.'s allegations, contending she contradicted herself and was not credible, and speculating that C.R.'s mother may have fabricated the allegations to "spite" him because they were having marital problems at the time. He further contended the State was misconstruing his text-message statements, asserting that portions of the messages were missing and police had failed to conduct an adequate investigation by failing to collect either C.R.'s or Appellant's cell phones to verify the authenticity of the messages. He posited that the messages were innocent, contending he was simply telling C.R. that he wanted to spend time with her and simply reminding C.R. that the "back rubs" he and C.R. used to give each other felt good.

The jury acquitted Appellant of the count for continuous sexual abuse of a child under the age of 14 years of age, but it found him guilty of two counts of sexual abuse of a child under the age of 17 and one count of indecency with a child under the age of 17. The jury sentenced him to 20 years on the first count of sexual assault, and ten years on each of the other two counts. The trial court ordered the sentences to run concurrently.

6

This appeal followed. In two issues, Appellant challenges the admissibility of certain testimony given by the SANE nurse and Detective Sandoval.

## THE SANE NURSE'S TESTIMONY

In Appellant's first issue, he raises two challenges to the SANE nurse's testimony. First, he complains that Nurse Antos's testimony in which she described the "narrative history" C.R. provided during her exam chronicling Appellant's abuse was hearsay and improper "vouching or bolstering" of C.R.'s testimony. Second, he complains that Nurse Antos's testimony expressing her opinion that a "normal" exam does not rule out the possibility that a child-victim may have been sexually abused was "beyond her area of her expertise." Appellant did not preserve either point of error for our review.

### A. Standard of review and preservation requirements

In general, an appellate court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will therefore uphold the trial court's evidentiary ruling unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We generally treat any error in a trial court's evidentiary ruling as non-constitutional error under Texas Rule of Appellate Procedure 44.2(b), which requires us to disregard the error unless it affects a defendant's "substantial rights." Tex. R. App. P. 44.2(b).

"To preserve error regarding the admission of evidence, a defendant must lodge a timely and specific objection" in the trial court. *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000). "The purpose of requiring [an] objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." *Id.* "The complaining

7

party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale." *Pena v. State*, 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009). "Error preservation does not involve a hyper-technical or formalistic use of words or phrases," but a party must nevertheless "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Id.* at 464; *see also* Tex. R. App. P. 33.1(A) (the grounds for an objection must be sufficiently specific "to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

In addition, an appellant's point of error on appeal must comport with the objection or request made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see also Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (en banc) (recognizing that "[a]n objection stating one legal theory may not be used to support a different legal theory on appeal").

Finally, when objecting to the admission of evidence, "a party must object each time the inadmissible evidence is offered or obtain a running objection" to the admission of the evidence. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)). Any error "in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Id*. Thus, a party may not complain on appeal about improperly admitted evidence if the same or similar evidence is admitted without objection at another point in the trial, either before or after the admission of the disputed evidence. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (en banc). Nor may a party complain about the admission of evidence when he himself has elicited the evidence. *See Peralta v. State*,

338 S.W.3d 598, 608–09 (Tex. App.—El Paso 2010, no pet.) (any error in admitting police officer's testimony regarding victim's out-of-court statements under the excited-utterance exception was not preserved where appellant "elicited the complained of testimony himself on cross examination"); *see also Ruffins v. State*, 666 S.W.3d 636, 642 (Tex. Crim. App. 2023) (recognizing that a defendant may be estopped from raising a point of error on appeal if doing so is "inconsistent with [his] prior conduct" at trial).

## B. The narrative history

On appeal, Appellant complains that Nurse Antos's testimony describing the narrative history C.R. provided was both improper "hearsay" and improper "bolstering" of C.R.'s testimony, asserting that her testimony improperly "shor[ed] up" or otherwise lent credence to C.R.'s testimony regarding the abuse. While Appellant objected to certain aspects of Nurse Antos's testimony, he did not raise either of these two objections in the trial court. He therefore waived both points of error.

### (1) The trial court objections do not comport with the points of error on appeal.

At trial, Appellant made two objections to Nurse Antos's testimony. First, Appellant raised a general objection to allowing Nurse Antos to testify when the State first called her as a witness because she had not yet been qualified to testify as an expert witness. The trial court then allowed the State to question her on voir dire, during which she testified she has been a certified SANE nurse for over 25 years, conducted approximately 4,000 SANE exams, and testified in 20 to 25 sexual assault cases. Nurse Antos stated she intended to testify regarding "what the child has told me and the exact diagnosis and treatment," the "process" used during the exam, and that C.R.'s exam was "normal." The defense stated it did not have any questions for Nurse Antos. Without

expressly ruling on her qualifications at that time, the trial court allowed Nurse Antos to begin her testimony without objection from defense counsel. Shortly thereafter, defense counsel objected that Nurse Antos had not yet been qualified as an expert. The trial court then ruled Nurse Antos was qualified as an expert, and defense counsel did not object to that ruling.[4] Nurse Antos then testified at length, without objection, regarding the narrative history she took from C.R. during the exam, including C.R.'s statements that Appellant had put his mouth in her vaginal area, inserted his finger in her vagina, and put his penis inside her mouth.[5]

Appellant did object when the prosecutor asked Nurse Antos if C.R. had said "anything about the relationship she had with him [and] whether it was similar to a father-daughter or a different kind of relationship." Defense counsel argued that any responsive testimony from Nurse Antos would be "outside the scope of her expert testimony as it relates to her SANE exam." The prosecution responded Nurse Antos had "already gone into this area of testimony" and argued Nurse Antos had testified that the narrative was "given to her for the purpose of getting medical treatment" and was therefore admissible. The trial court overruled the objection, and Nurse Antos testified that C.R. told her Appellant "saw her more as a girlfriend than as a daughter." Later, Nurse Antos again testified, without objection, that C.R. had informed her about Appellant "putting his

---

[4] In his brief, Appellant appears to be raising a challenge to the trial court's ruling that Nurse Antos was qualified to testify as an expert witness, but he does little more than cite to the standards for qualifying a witness as an expert. *See Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006) ("before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case"). Appellant does not explain why he believes Nurse Antos did not qualify under those standards, and we therefore do not address that issue in our opinion.

[5] At trial, Nurse Antos used a report she wrote to refresh her recollection regarding C.R.'s narrative. Initially, defense counsel objected to the admission of the report. But when the State clarified it was not seeking to admit the report and instead only use it to allow Nurse Antos to refresh her recollection, defense counsel did not lodge any further objections.

finger inside her vagina, putting his mouth on her vagina [and] putting his penis inside her mouth." Finally, on cross-examination, defense counsel elicited testimony from Nurse Antos in which she reiterated that C.R. informed her Appellant had put his mouth on C.R.'s vagina, his finger in her vagina, and his penis inside her mouth.

Contrary to Appellant's argument, we do not believe that his "scope" objection to Nurse Antos's testimony preserved either his hearsay or "bolstering" points of error on appeal, as there is nothing in the record to suggest Appellant made it sufficiently clear to the trial court that he was raising, or attempting to raise, either objection. A hearsay objection relates to the admission of an out-of-court statement offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. Rule 801(d). Hearsay is generally not admissible unless it fits in one of the exceptions provided in the Texas Rules of Evidence or other rule or statute.[6] *Id.* at 802. Appellant, however, did not refer to the rule against hearsay at any time when objecting to Nurse Antos's testimony. We therefore conclude Appellant did not preserve a hearsay point of error for our review.[7] *See Saldivar v. State*,

---

[6] One such exception to the hearsay rule is for statements "made for—and [are] reasonably pertinent to—medical diagnosis or treatment." Tex. R. Evid. Rule 803(4). Thus, courts have held that when a child-victim provides a narrative history to a SANE nurse for the purpose of diagnosis or treatment, the child-victim's statements fall within this exception. *See, e.g.*, *Olivarez v. State*, No. 13-18-00374-CR, 2019 WL 4866039, at *7 (Tex. App.—Corpus Christi–Edinburg Oct. 3, 2019, pet. ref'd) (mem. op.) (finding history that child-victims gave to SANE nurse for purposes of medical diagnosis and treatment were admissible under Rule 803(4)); *Bargas v. State*, 252 S.W.3d 876, 896 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that Rule 803 provides an exception for admitting hearsay statements describing sexual abuse made for the purpose of facilitating medical diagnosis or treatment). However, because Appellant did not make a hearsay objection, the parties did not discuss this or any other exception to the hearsay rule in the trial court. Moreover, although in its briefing on appeal the State argues this exception applies to the nurse's testimony, Appellant did not provide any argument against its application.

[7] Moreover, Appellant does not provide any argument or citation to legal authority in his brief to support his hearsay argument. Although he refers to the term "hearsay" at two points in his brief, he cites no authority for the proposition that C.R.'s statements to the nurse constituted inadmissible hearsay. The Texas Rules of Appellate Procedure require an appellant's brief to include "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). We therefore conclude that Appellant's hearsay point of error is waived for this reason as well. *See Nava v. State*, No. 08-08-00197-CR, 2010 WL 2410395, at *4 (Tex. App.—El Paso June 16, 2010, pet. ref'd) (not designated for publication) (finding that appellant waived his arguments on appeal where he failed to provide adequate briefing as required by Rule 38.1(i)).

11

980 S.W.2d 475, 494 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (appellant did not preserve hearsay argument for appeal where he did not raise a hearsay objection in the trial court); *see also Brasher v. State*, No. 05-01-00367-CR, 2001 WL 1563658, at *1 (Tex. App.—Dallas Dec. 10, 2001, pet. ref'd)(mem. op., not designated for publication) (concluding same).

We reach a similar conclusion with respect to Appellant's "bolstering" point of error. Although the concept of what constitutes "bolstering" is somewhat unclear, the San Antonio Court of Appeals has held that "bolstering" involves situations in which "one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *Nassouri v. State*, 503 S.W.3d 416, 419 (Tex. App.—San Antonio 2016, no pet.) (quoting *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993)). Again, however, Appellant did not refer to "bolstering" at any time when he objected to Nurse Antos's testimony in the trial court, and we cannot say that the trial court would have understood that Appellant was raising or attempting to raise such an objection. He therefore did not preserve his "bolstering" point of error for our review. *See Leon v. State*, No. 03-19-00883-CR, 2021 WL 2149630, at *1–5 (Tex. App.—Austin May 27, 2021, no pet.) (mem. op., not designated for publication) (where appellant presented "no bolstering objection to the trial court [he] failed to preserve that complaint for appellate consideration") (citing *Franco v. State*, 339 S.W.3d 793, 795 (Tex. App.—Amarillo 2011, no pet.); *Reyes v. State*, 267 S.W.3d 268, 274 (Tex. App.—Corpus Christi 2008, pet. ref'd) (determining appellant waived bolstering issue on appeal because appellant's objections at trial did not comport with bolstering argument on appeal)).

**(2) The defense did not object each time the evidence was admitted.**

Moreover, even if Appellant's objection at trial sufficiently corresponded to his argument

12

on appeal, we would still find that he waived the right to complain about the narrative history testimony, given Nurse Antos's unobjected-to testimony on the same subject both before and after he lodged his objection. Appellant allowed Nurse Antos to testify in detail on direct examination regarding the specific statements C.R. made to her regarding Appellant's abuse on at least two other occasions, and his attorney further elicited testimony from Nurse Antos on cross-examination regarding the same statements.

Accordingly, Appellant cannot be heard to complain about the admission of the very same statements on appeal. *See Peralta*, 338 S.W.3d at 608–09; *Ruffins*, 666 S.W.3d at 642.

**C. The testimony regarding the meaning of "normal" exams was appropriate.**

Next, Appellant takes issue with Nurse Antos's testimony explaining C.R.'s exam was "normal," i.e., C.R. had no bruising or tearing in her vaginal area, which Nurse Antos explained was typical in "nonacute" cases (cases in which the abuse did not recently occur). Appellant contends this testimony constituted an improper expression of Nurse Antos's opinion that a "normal exam" could be "explained away," thereby allowing "an inference" that despite a normal exam, a child could still have been sexually assaulted. According to Appellant, a SANE nurse is "only allowed to testify to what tests or examination is performed, not explain away why the exam was normal and the child could still be abused." He thus contends her testimony constituted a matter "beyond a nurse's area of expertise."

Once again, Appellant failed to preserve error, as he did not object to Nurse Antos's testimony on this subject in the trial court. Moreover, Appellant cited no authority, nor are we aware of any, to support his argument that Nurse Antos's testimony went beyond the proper scope of her expertise when she explained the meaning of a "normal" exam. In his brief, Appellant

13

primarily relies on *Salinas v. State*, 166 S.W.3d 368 (Tex. App.—Fort Worth 2005, pet. ref'd) for this proposition. But *Salinas* is inapposite. In *Salinas*, our sister court held that the trial court erred in allowing a SANE nurse to opine that a child-victim had been sexually abused, even though her medical exam was normal. *Id.* at 370–71. The court found her testimony inadmissible, as it expressed her opinion about the truth of the child-victim's claim, improperly bolstering the victim's testimony. *Id*. Here, however, Nurse Antos did not opine on the truth or falsity of C.R.'s claims. Instead, she simply explained, in neutral terms, that a "normal" exam did not preclude a finding of abuse.[8]

Accordingly, we conclude Appellant's arguments regarding the inadmissibility of Nurse Antos's testimony fail.

Appellant's Issue One is overruled.

## THE DETECTIVE'S TESTIMONY

In Appellant's second issue, he contends the State improperly elicited testimony from Detective Sandoval in which he opined on C.R.'s "believability." Appellant points to a portion of the detective's testimony in which the State asked him whether, in the thousands or more sexual assault cases he has investigated, he always forwards them to the District Attorney's Office. Detective Sandoval replied he did not, explaining that he determines whether to "file with the DA's office" by considering the "believability" of the child-victim's statements. In particular, he looks to whether the child was "fairly consistent" in reporting the abuse to the "reporting officer" and

---

[8] Appellant also relies on the Court of Criminal Appeals holding in *Winfrey v. State*, 323 S.W.3d 875, 884–85 (Tex. Crim. App. 2010) in which the court held that although the results of a "dog-scent lineup" could be relevant in determining a defendant's guilt, because such evidence lacks scientific reliability, it is not legally sufficient standing alone to establish a person's guilt beyond a reasonable doubt. However, Appellant has not explained how this case is relevant to the evidentiary issues he has raised in his appeal.

the forensic interviewer. The detective further explained that if he finds the child's interview "believable" and if he "believe[s] her," he will "generally forward that case to the DA's office" for prosecution." When asked if he forwarded "this case," Detective Sandoval responded that he had.

Appellant contends Detective Sandoval's testimony effectively conveyed to the jury that he believed C.R. was telling the truth, thereby placing his "stamp of approval" on her testimony. And he argues such opinion testimony was inadmissible because it constituted improper "bolstering" of C.R.'s allegations and lent credence to her testimony. *See Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993) (en banc) (recognizing that a "a direct opinion as to the truthfulness of a witness 'crosses the line' . . . because it does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue'; it *decides* an issue *for* the jury."); *see also Schutz v. State*, 957 S.W.2d 52 (Tex. Crim. App. 1997) (en banc) (recognizing that opinion testimony directly commenting on the truthfulness of a child-witness's testimony is inadmissible).

As the State points out, however, Appellant did not object to Detective Sandoval's testimony on this or any other ground. In his brief, Appellant relays only one objection he made to Detective Sandoval's testimony at trial. When the prosecutor asked him whether he knew what "grooming" was, defense counsel objected to the "form of the question" and argued it was "outside the scope of the witness' testimony [that] we're here for today." The court sustained the objection, and the State did not pursue that line of questioning.

That objection was made to an entirely different line of questioning at an entirely different time in Detective Sandoval's testimony. We fail to see how that objection could preserve error on the issue Appellant is now attempting to raise on appeal. *See Lewis v. State*, No. 14-21-00691-CR,

15

2023 WL 4873306, at *9 (Tex. App.—Houston [14th Dist.] Aug. 1, 2023, pet. ref'd) (where appellant objected to only one portion of medical records, but not others, he failed to preserve error as to the unobjected-to portions). Because Appellant did not preserve this point of error for our review, we do not address the merits of his argument that Detective Sandoval provided improper opinion testimony at trial. *See Obella v. State*, 532 S.W.3d 405, 407 (Tex. Crim. App. 2017) (recognizing that "it is the duty of the appellate courts to ensure that a claim is preserved in the trial court before addressing its merits.").

Appellant's Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

LISA J. SOTO, Justice

July 9, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)

16